JOHN F. HINKLE, Surviving Executor of JOHN FOLK, and LEONARD HINKLE *vs.* JONATHAN WILSON and IRENE WILSON.

*Transfer of a Husband's Interest in Property purchased at Trustees' Sale, by Deed to his wife from the Trustee under order of Court, in prejudice of the Rights of his Subsisting Creditors—Act of 1868, ch. 443, as to recording Justices' Judgments and Executions thereon.*

On the 3rd December, 1870, at a trustee's sale of an intestate's real estate for the purpose of partition among his heirs-at-law, J. W., husband of one of the heirs-at-law, purchased a part for $2255; terms, one-third cash, balance in equal instalments at one and two years from day of sale, with interest. J. W. signed the contract of sale and his note, with surety, for the deferred payments. The sale was reported and ratified, and J. W. entered into possession of the land as his own; and during 1872 to 1876, borrowed various sums of money, in his own name and on his own credit, to pay on the purchase, on which account was also paid an amount lent by a person to whom in 1874, he executed a mortgage on the land for the security of part of what he received, without joinder of his wife, reciting his own indebtedness for the amount. After a petition by the trustee in December, 1875, for a re-sale at the risk of J. W., for the balance of purchase money unpaid, in March, 1876, the trustee reported the amount due by J. W. to be $956.52 including interest. A distribution of this amount was made and the share distributed to J. W's wife was $328.80. The aggregate of all distributions to her from the whole estate was $1241, which amount was credited to the purchase money. On the 15th February, 1878, J. W's wife, on his petition, in which he stated that he had sold his interest to her for a valuable consideration, was substituted by order of Court, in his stead as purchaser; and a deed was made to her by the trustee, and recorded the 19th February, 1878. The appellee, J. W., became indebted to the appellants in 1872 and 1874, and on some of their claims they had recovered judgments before a justice of the peace. On a bill filed by the appellants to have the deed to J. W's wife set aside, as being in prejudice of their rights as creditors, it was HELD:

That while the deed from the trustee to J. W's wife should be set aside as an absolute conveyance of the property, it would be allowed to stand as security to the grantee for the principal sum of $1241; subject, however, to the mortgage executed by J. W.; and that executions and levies on the land, under the appellants' judgments duly recorded, as required by the Act of 1868, ch. 443, constituted liens, according to their priority, upon J. W's equitable interest in the land; and that if such liens or judgments were not otherwise discharged, that equitable interest might be sold.

APPEAL from the Circuit Court of Allegany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and IRVING, J.

*D. J. Blackiston* and *James E. Ellegood,* for the appellants.

*James A. McHenry* and *J. J. McHenry,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

This is an application on the part of the appellants, creditors of Jonathan Wilson, to have set aside a deed to Irene Wilson, his wife, as being in prejudice and fraud of the rights of said creditors.

In order to a proper understanding of the case, it is necessary to state quite fully the facts which led to the making of the deed to the wife:

On the 3rd of December, 1870, James J. McHenry, trustee under a decree for the sale of the real estate of A. H. Gross, deceased, for the purpose of partition among the heirs-at-law of the intestate, sold a part of such real estate, designated as "Part 3," to Jonathan Wilson, who had married Irene, one of the children and heirs-at-law of

the deceased. The purchase amounted to the sum of $2,255, and, according to the terms of sale, the one-third of the purchase money was payable in cash and the balance in equal instalments of one and two years from the day of sale, with interest. Wilson signed a contract of sale and purchase, obligating himself to comply with the terms of sale, and to pay the purchase money. The report of the trustee, made on the 5th of December, 1870, under oath, that Wilson had become the purchaser of this particular part of the estate, was duly ratified by the Court on the 30th of January, 1871. Wilson gave his note for the deferred payments, with John Folck as surety. At the time of sale and down to the present, Wilson was and has been in possession of the property thus purchased; and since the sale down to the time of making the deed to the wife, he spoke of, claimed and treated the property as his own; and during the years 1872, 1874, and down as late as 1876, he borrowed money, in his own name and on his own credit, to pay on the purchase. In 1874 he executed a mortgage on the property purchased, for $500, to Martha Hinkle, without even the joinder of his wife, reciting his own indebtedness for the amount; and according to his own testimony, he obtained from the same party the sum of $800, including the amount secured by the mortgage, which was paid on the purchase; and, in addition to that amount, the sum of $200, obtained from Zimmerly, and the sum of $100, obtained from Nathan Wilson, he also admits were borrowed by himself and paid on the land purchased by him. And having failed to make the last payment, the trustee, on the 21st of December, 1875, filed a petition for re-sale of the property, in which he stated, under oath, that he had "received from the said Jonathan Wilson the payment of the cash or down money, and also the payment of the first deferred instalment, *partly in cash,* and by the distribution made to the wife of the said Jonathan Wilson, in

this cause, and received from the said Wilson part of the second deferred payment by a distribution in the fourth audit herein to Irene Wilson, his wife, for which his note had been given; but the said Jonathan Wilson has neglected to pay the balance of said note, although repeatedly called upon by your trustee so to do, and has continued to neglect to pay the balance due on said note," &c. Upon this petition, the Court, by its order of December 21st, 1875, directed that, unless the balance due on the purchase was paid on or before the 10th of January, 1876, the trustee should proceed to make re-sale of the property, at the risk of the purchaser, Wilson. Soon thereafter, that is, on the 7th of March, 1876, the trustee reported the amount due from Wilson on his purchase to be $956.52, including interest; and stated that it had not been paid, but that he, the trustee, was willing that the amount should be distributed, and that payment would be arranged after the ratification of the audit. This was preliminary to stating the fifth and last audit in the case; and the amount distributed in that audit to the wife of Wilson was only $328.80; and the entire aggregate of all the distributions to her from the whole estate sold, as made in the several audits, amounted to only the sum of $1,241; leaving a balance of over a thousand dollars of the original purchase money, to say nothing of the interest, which must have been considerable, that was required to be paid over and above the distributions made to the wife.

Now, upon all the facts of the case, it must be taken as clear, that Wilson not only made the purchase in his own name, and was treated and proceeded against by the trustee as the purchaser in his own right, but that he paid all the residue of the purchase money, over and above the amount of the distributions to the wife, irrespective of any claim that the wife was the real purchaser as now asserted. It is true, part of the money paid by him

remains charged upon the property by mortgage, and for a certain other part, for aught that appears, he is still bound. But the money thus raised was paid on his purchase and not that of the wife.

The debts due the appellants appear to have been contracted in the years 1872 and 1874; and after proceeding commenced and judgments recovered before a justice of the peace on some of them, Wilson, on the 15th of February, 1878, in his own name alone, filed a petition in the cause in which the sale to himself had been reported, for the purpose of having his wife substituted in his place as the purchaser of the property. In this petition, he alleged that he had assigned whatever interest, if any, he had in the purchase to his wife, for a valuable consideration, and that he was desirous to have his wife substituted in his stead as purchaser of the property, in order that a deed might be made to her, upon the payment of the whole purchase money, or any balance thereof unpaid, by his said wife; and he prayed that, by an order of Court, his wife might be subrogated to all his rights as purchaser. The Court, accordingly, on the same day, passed an order substituting the wife as purchaser, and directed a deed to be made to her by the trustee. The deed was made and placed upon record on the 19th of February, 1878.

This proceeding was not only summary and very expeditious in its accomplishment, but it was entirely *ex parte*. And such being its character, it is needless to say that neither the order of Court nor the deed made in pursuance of it, can have any force to bind and conclude the pre-existing creditors of Wilson, the original purchaser. That proposition has been expressly decided by this Court, and by others, in respect to similar proceedings. *Plummer & wife vs. Jarman*, 44 *Md.*, 632; *Humes vs. Scruggs*, 94 *U. S.*, 22, 25.

Here then is a case where the husband, being indebted to the parties complaining, and, according to the proof,

utterly insolvent, attempts to transfer his interest in certain property to his wife, for what he alleges to be a valuable consideration. As we have seen, the attempt to show that the property was originally purchased by the wife, and that the husband acted only as agent for her in making the purchase, utterly fails. Such pretence is wholly inconsistent with every thing connected with the sale, and with the conduct and declarations of the parties to the contract. And as to the subsequent transfer of the interest of the husband to the wife, that is expressly forbidden by the statute, "if the same has been made or granted to her in prejudice of the rights of his subsisting creditors." Code, Art. 45, sec. 1. But to overcome this difficulty it is contended for the appellees that though the purchase was in fact made by the husband as reported by the trustee, yet, the whole purchase money was paid by the wife, and therefore there is a resulting trust in her favor. But from what we have already said in regard to the state of the proof, it follows that there is no just foundation for this contention. The attempt to show how the wife obtained the means, other than the distributions made to her as one of the heirs of her father, with which to pay for the property, has no support from any well established fact in the case. It does not appear that she had any separate estate, other than the distributions, from which she could realize the means of payment; and, as we have already said, the proof is quite clear that all the residue of the purchase money, after crediting the distributions made to her, was provided by the husband, the original purchaser. The *onus* of proof was upon her; and as was very forcibly and truthfully said by the Supreme Court of the United States, in the case of *Seitz vs. Mitchell*, 94 *U. S.*, 580, 582—a case quite analogous in its facts to the present,—"Purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly ap-

pears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property; are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof. Such has always been the rule of the common law; and the rule continues, though statutes have modified the doctrine that gave to the husband absolutely the personal property of the wife in possession, and the right to reduce into his possession and ownership all her choses in action." In that case many authorities are referred to laying down the same general doctrine.

But, notwithstanding the transaction between the husband and wife cannot be sustained to the extent asserted and claimed by them, as against the pre-existing creditors of the husband, yet, we think the wife should be protected to the extent that her money was invested in the purchase. The proof makes it clear that all the distributions made to her from the sales of her father's real estate, amounting in the aggregate to the sum of $1,241, were thus appropriated. This was her property, and it was in no manner liable for the debts of her husband. The proof shows, moreover, that she supposed from the beginning that the money to be distributed to her would be invested in the farm for her benefit, though, as she testifies, she did not know how the purchase was made, or what form it had assumed. So far as the wife is concerned therefore, the deed from the trustee is rather constructively fraudulent as against the creditors of the husband, than fraudulent in fact. In such case a Court of equity will deal with the instrument, sought to be vacated, on special terms. Re-

garding the consideration shown as just and equitable, though not adequate to support the deed according to its legal import, the Court will allow the deed to stand as security only for the money actually paid by the grantee. For this the authorities afford ample warrant. *How vs. Weldon & Edwards,* 2 *Ves.,* 516, 520; *Boyd vs. Dunlap,* 1 *John. Ch.,* 478, 482; *Williams vs. The Sav. Manf. Co.,* 3 *Md. Ch. Dec.,* 419, 454.

Therefore, while the deed from the trustee to Mrs. Wilson must be set aside as an absolute conveyance of the property, it will be allowed to stand as security, and as security only, to the grantee for the principal sum of $1,241, the amount of the distributions from the sale of her father's real estate; subject, however, to the mortgage to Martha Hinkle, dated the 6th of February, 1874. And if the appellants have had their magistrate's judgments duly recorded, and executions thereon levied on the land, as provided by the Act of 1868, ch. 443, then such executions and levies constitute liens, according to their priority, upon the equitable interest of Jonathan Wilson in the land, whatever may be the extent of that interest; and if such liens or judgments are not otherwise discharged, that equitable interest may be sold.

We must therefore reverse the decree appealed from dismissing the bill, and remand the cause that a decree may be passed in accordance with the principles of this opinion.

*Decree reversed, and*
*cause remanded.*