(Decided November 23rd, 1894.)

## OTHO HULL AND WIFE AND WM. EUBANK *vs.* WM. DEERING & COMPANY.

*Fraudulent Conveyances—Grossly Inadequate Consideration—Fraudulent Conveyance of Individual Property by one Partner.*

A conveyance by an insolvent debtor of his tangible property to a trustee for the benefit of his wife for a grossly inadequate consideration is fraudulent and void as to his existing creditors, but will be allowed to stand as security for the value of the wife's separate estate acquired by the grantor as a part of the consideration for the deed.

A creditor of a firm is not entitled to assail a voluntary deed of his property by one of the partners because fraudulent as against creditors, unless he shows that the firm assets are insufficient to pay the firm creditors, and that there are no individual creditors of such partner, or that the individual property is more than sufficient to pay them in full.

Appeal from the Circuit Court for Washington County. The case is stated in the opinion of the Court.   The bill of complaint in this case was filed by the appellees to set aside as fraudulent the conveyance of certain real estate situate in said county by O. Hull to Eubank in trust for Hull's wife.   The property was sold under a decree, and the amount of net proceeds in the hands of the trustees was $1,363.18. The deed by Hull to Eubank was for the purpose of secur-

ing the payment to Hull's wife, Lou E. Hull, of the sum of $8,000, evidenced by the bond of Hull, payable on demand, and it was covenanted that the grantor should remain in possession of the property until default be made in payment. The consideration set forth in the deed was "natural love and affection for his said wife, and the further consideration of her joining with him in conveying to Wm. T. Fitzpatrick a tract of land containing sixty acres, lying in Appomattox County, Virginia, it being her separate estate, and the further consideration of the sum of one dollar." The Court below (STAKE, J.), stated in its opinion that the said land in Virginia, owned by Hull's wife, " is unfenced and without any buildings; that there is some smoke-pipe clay on it, which depreciates it for agricultural purposes; that the pipe-clay has no value in the market as a mineral. * * These witnesses value the land at from $2.50 to $3 per acre." The decree of the Court below declared to be void the deed executed by Hull to Eubank, " as against the complainants and all other creditors of the said Otho Hull who may come in as parties to this suit, in so far as the said deed provided for securing to the said Lou E. Hull the payment of the sum of $8,000 ; but it is further adjudged, ordered and decreed, by the authority of this Court, that the said deed from Otho Hull and wife to William Eubank, trustee, remain in force and effect to the extent, and to the extent only, of securing to the said Lou E. Hull the payment of a sum equal to the value of the tract of land situated in Appomattox County, Virginia, described in the deed of conveyance from her and her husband to Wm. F. Fitzpatrick, and from him to the said Otho Hull, containing sixty acres, at the valuation of $2.75 per acre."

The cause was argued before ROBINSON, C. J., BRYAN, MCSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*Alex. R. Hagner* for the appellants.
The bill of complaint here and the attachment proceed-

ings therein referred to are efforts on behalf of Deering & Co. to set aside the conveyance made by Otho Hull, the appellant, to Wm. Eubank, trustee, for the benefit of Lou E. Hull, and to acquire a lien on the individual property of Otho Hull for themselves over his individual creditors. There are no proceedings in this cause showing that the appellees have made any effort to obtain satisfaction of the claim, Exhibit No. 1, out of the assets of the firm of D. F. & Otho Hull: There has been no return by the Sheriff of *nulla bona* as to the firm. *Non constat* this partnership debt could be made out of the joint assets of the firm. By reference to the bill of complaint there are a large number of individual creditors of Otho Hull, the appellant, whose claims in law are ahead of the partnership debts with regard to his individual property. The appellants are seeking a preference by these proceedings over individual creditors.

Joint property of a partnership must be applied to partnership debts, and separate property to individual debts. *Glen* v. *Gill*, 2 Md. 1 ; *Berry* v. *Harris*, 2 Md. Chan. 463. If there be a joint fund ever so small the joint creditors will not be permitted to receive dividends of the separate estate, etc. *McCulloh* v. *Dashiell*, 1 H. & G. 104. Joint creditors in equity can only look to the surplus of the separate estate after the payment of the separate debts. *Berry* v. *Harris*, 22 Md. 37 ; *Simmons* v. *Tongue*, 3 Bland, 356 ; *Murrell* v. *Naill*, 8 Howard, 428 ; *Marme* v. *Murdock*, 13 Md. 179.

A party obtaining a judgment against a firm is not a judgment creditor of an individual partner in such a sense that he can attack a conveyance by said partner of individual property in fraud of creditors. *McCoy* v. *Watson*, 51 Ala. 466 ; 17 *Am. & Eng. Ency. of Law*, 1252.

The property in question was the individual property of Otho Hull. Therefore, the appellees, with regard to their claim marked Exhibit No. 1, against the firm of D. F. & Otho Hull, are not in the position to ask a Court to set

aside the deed of conveyance in this case. The answer of Otho Hull sets up that there are sufficient funds of D. F. & Otho Hull to pay the claim of the appellees.

Lou E. Hull, the wife of Otho Hull, the appellant, owned a tract of land containing 60 acres, her separate estate, gotten from her parents in 1884. This tract of land was conveyed by her and her husband to Wm. T. Fitzpatrick, and by him conveyed to Otho Hull, the law of the State of Virginia requiring the above proceedings in order that a wife may convey to her husband her separate realty. This tract of land was the real consideration for the deed of trust. At the time of the execution of the deed of trust, lands in the State of Virginia were bringing high prices, minerals being found nearly everywhere. Otho Hull believed, as he swears, that it was valuable mineral land, and his object was to get the tract in order that he might induce monied men to go in with him to work the fire-clay and minerals. He considered he was getting value received for the deed of trust. Hull believed he was getting, by obtaining the 60 acres of land from his wife, full value for the deed of trust in question, which only conveyed his equity of redemption in his property in Hagerstown, which brought at the sale, after the prior liens were satisfied, $1,363.10, now in the hands of the trustees to await further orders of the Court, which was all the said Otho Hull conveyed to his wife, in consideration of this tract of 60 acres of land in Virginia. The effort on the part of the appellees in rebuttal to depreciate the value of the 60-acre tract as late as 1893, should in no wise figure in this case. To determine whether the consideration is sufficient or not, the condition of things at the date of the deed must be regarded. *Zimmer* v. *Miller*, 64 Md. 298.

*William Kealhofer* and *J. Clarence Lane*, for the appellees.

The ability of Otho Hull to pay his debts is absolutely disproved by the evidence in the cause. He owned no property in this State which could be subjected to the pay-

ment of his debts, except that conveyed by the deed of trust to Eubank.

There is an enormous preponderance of testimony against Otho Hull, which leads to the conclusion of a fraudulent intent upon his part, and the *onus* of disproving the fraud rests upon him. As stated by the Court below, "A deed founded on a money consideration, which bears no adequate relation to the real value of the property, though valid as between the parties, may be assailed in chancery, by creditors, solely on the ground of inadequacy of consideration, and such a conveyance is voluntary to the extent of the difference between the consideration and the value of the property conveyed." *Worthington* v. *Bullitt,* 6 Md. 172; *McNeal* v. *Glenn,* 4 Md. 87; *Schaferman* v. *O'Brien,* 28 Md. 87; *Cone* v. *Cross,* 70 Md. 102; *Benson* v. *Benson,* 70 Md. 253; *Swann* v. *Dent,* 2 Md. Ch. 111; *Cunningham* v. *Dwyer,* 23 Md. 219; *Foley* v. *Bitter,* 34 Md. 654; *Fuller* v. *Brewster,* 53 Md. 358, 351; *Zimmer* v. *Miller,* 64 Md. 296, 300. Where the circumstances are such as to lead to the inference of fraud, *onus* of disproving it rests on the parties to the transaction. If, therefore, a grantor having creditors makes a disposition of his property under such circumstances as are proved in this case, it will follow that he was actuated by an intent, which cannot receive the sanction of the Court.

McSHERRY, J., delivered the opinion of the Court.

The decree appealed from in this case vacated and set aside as fraudulent a deed of trust executed by Otho Hull to William Eubank, and dated on the twenty-third day of September, 1890. The deed, in which Hull is named the party of the first part, Eubank the party of the second part, and Lou E. Hull, the wife of Otho Hull, the party of the third part, conveys certain real estate lying in Washington County, Maryland, to the party of the second part in trust, "to secure to said Lou E. Hull the payment of the sum of eight thousand dollars, evidenced by a bond of said Otho Hull of even date with" the deed, "and payable on de-

mand." The consideration set forth in this deed is, first, natural love and affection ; second, the fact that the wife had joined with Otho Hull in conveying to William T. Fitzpatrick a tract of land containing sixty acres, lying in Appomatox County, Virginia, which land was her separate estate, and which Fitzpatrick conveyed immediately afterwards to Hull ; and thirdly, the sum of one dollar. The bill of complaint assailing this conveyance was filed February the ninth, 1891. Amongst other things it alleges that Hull and his brother, D. Frank Hull, were, in 1888 and 1889, engaged in business in Hagerstown as partners, under the firm name of D. F. & Otho Hull; that they became indebted to the appellees in a considerable amount, and that, in addition to this indebtedness, Otho Hull also individually owed the plaintiffs several hundred dollars. Upon both of these claims foreign attachments were issued against Otho Hull before the bill was filed, and in both proceedings judgments appear to have been subsequently confessed by the defendant. The bill averred that the deed of trust was fraudulent, and that it had been made with intent to hinder, delay and defraud the appellees and other creditors of Otho Hull, many of whom, holding liens on the same property con veyed by the deed, were joined as co-defendants. The answer of Hull and wife denied the material allegations of the bill, and insisted that if there was anything due to the appellees, it was due by the firm of D. F. & Otho Hull, and that there were sufficient assets belonging to that firm with which to pay its indebtedness.

There is little or no difficulty about the law of this case. A voluntary conveyance made by a husband directly to his wife or to a trustee for her benefit, in prejudice of the rights of the grantor's subsisting creditors is, under Art. 45, sec. 1, of the Code, invalid. Such a conveyance is in prejudice of the rights of creditors when it strips the grantor of property which otherwise would have been available for the payment of his debts and leaves him in possesion of no other property which can be discovered or reached. A debtor

has no right by a conveyance of this character to impede, hinder or delay his creditors in recovering payment of their claims; and it matters not, so far as respects its validity, how much intangible, hidden or concealed property may remain, if by a voluntary conveyance to his wife, or to another for her benefit, he renders it impossible, or even more difficult, for his creditors to enforce payment of the sums that are due to them. So far, then, as the considera- tion of natural love and affection and the nominal considera- tion of one dollar are concerned, the deed would be invalid as against creditors subsisting at its date whom it hinders and delays; and if nothing else remained to support it, it would of necessity fall when assailed by any one entitled to question it.

There remains the other consideration stated in the deed, viz., the conveyance by the wife of her separate estate sit- uated in the State of Virginia. It is claimed by the appel- lant, Otho Hull, that this property was very valuable in consequence of large deposits of minerals and clay, and in his testimony he estimated it to be worth as much as ten · thousand dollars. But he is supported in this by no other witness. On the contrary, the overwhelming weight of the evidence clearly and conclusively demonstrates that this Appomattox County land is of trifling value; that it con- tained no mineral deposits, and that it was worth only from two and a-half to three dollars per acre. Estimating it at even the highest of the figures named, its utmost value would not exceed one hundred and eighty dollars. A con- sideration amounting to no more than that sum would be wholly inadequate to support the deed of trust against the grantor's attacking creditors. The value of Hull's interest in the property conveyed by the deed of trust has been ascertained by a sale of that property and the payment of the liens upon it. The amount remaining, which has been treated as standing in the place of the property, is largely in excess of the sum of one hundred and eighty dollars.

Upon the hypothesis that Otho Hull was indebted when

he executed the deed of trust in an amount larger than the value of his available and tangible assets, the deed, supported by the insufficient considerations alluded to, cannot prevail against the grantor's creditors except to the extent to be presently stated. And this brings us to an examination of Hull's financial condition at the date of the execution of the deed.

Whilst he has testified that he then possessed both real and personal property, situated in the State of Virginia, and had on deposit to his credit in a Lynchburg bank some fifteen hundred dollars, the certificates furnished by the Clerk of Bedford County, Virginia, and found in the record, show that by far the most valuable part of the real estate, the title to which appeared by the deed he exhibited to stand in his own name, he had conveyed to his wife long prior to his examination as a witness. He suppressed all reference to this latter conveyance, of the existence of which he was, of course, fully aware. The value of the residue of his real estate was insignificant, and his personal property, also situated in Virginia, even at its assessed valuation, was not sufficient to pay his indebtedness. The money to his credit in bank during the month of August, 1890, does not appear and was not shown to have been there when the deed of trust was made in September; nor has he given any account as to the disposition he made of it, if he has ever parted with it at all. The deed of trust substantially and practically stripped him of all the real property which he owned in Maryland, and his personal property, situated in Washington County, was seized and sold under executions issued on judgments recovered against him.

In the face of all the facts to which we have alluded, it is idle to say he was not insolvent when he executed the deed of trust, or to insist that the conveyance, whose good faith is now impeached in these proceedings, did not hinder or was not made with an intent to hinder, delay and defraud his creditors. It attempted and was obviously designed to put beyond the reach of his creditors the great bulk, if not

the whole, of his Maryland real estate which was available at the date of its execution for the payment of his debts; and it attempted to do this by a conveyance, part of whose expressed consideration made that conveyance, as to that part, purely voluntary; and the residue of whose consideration has been conclusively shown to be grossly inadequate. It was therefore clearly the duty of the Circuit Court to declare the deed invalid, except in so far as it might be allowed to stand as a security to the wife to the extent of the value of her separate estate conveyed through Fitzpatrick to the husband, as heretofore stated. That the deed should be allowed to stand as security for the value of the wife's separate estate acquired by the husband as a part of the consideration for the deed of trust is fully warranted by the authorities. *Hinkle* v. *Wilson,* 53 Md. 293; *Williams* v. *The Sav. Man. Co.,* 3 Md. Ch. Dec. 454.

What we have said thus far is based on the assumption that the appellees were entitled to file and prosecute the pending proceedings. But it has been insisted in the argument that the decree was erroneous because the debt due by Otho Hull to the appellees was not due by him personally, but by the firm of which he was a member; and that until the social assets have been first exhausted, no part of his individual property can be taken to pay the debts due by the copartnership. It is undoubtedly true, in a contest between creditors of a partnership and creditors of the members of that partnership, that the former must primarily look for payment to the partnership assets and the latter to the individual assets of the members of the firm. Logically no reason can be assigned why the same doctrine should not equally apply in favor of the debtor when his individual property has been seized by a creditor of a firm of which he is a member, and it is neither averred nor shown that there are no social assets. If the partnership be possessed of sufficient means to fully pay and satisfy all its debts, then no voluntary deed made by a member of that firm conveying his individual property can be fraudulent as to the firm creditor, or can

hinder or delay him, because in the case supposed, the creditor would have no claim whatever upon the individual property for payment. If he has been neither injured, delayed, nor hindered by such conveyance, because of there being sufficient social assets to pay his claim, he manifestly has no standing in a Court of Equity to question or assail it. But beyond this he has no right to resort to the individual property until the firm's assets have been exhausted and the individual debts have been paid. Hence, until he shows that he has the right to resort to the individual property for the payment of the debt due by the firm, no disposition of that individual property can, in the nature of the thing, be prejudicial or injurious to him. Unless he shows that he has a right to avail of it for the payment of his debt, he cannot be heard to question the use its owner may see fit to make of it. It results thence, that to enable him to secure payment out of the individual property, he must aver and show that he is in a position to enforce that payment, or, in other words, that there are no firm assets or an insufficiency of firm assets, and that there are no individual creditors, or that the individual property is .more than sufficient to pay them in full. Until he does this he is obviously in no position to impeach a conveyance of individual property, and he is in no position to impeach it because he has no claim upon or right to look to that property for payment. *McCoy* v. *Watson*, 51 Ala. 466 ; 2 *Lind. Part.*, *star*, page 706.

But the case at bar cannot be controlled by these principles, because the appellees are not only creditors of the firm of D. Frank and Otho Hull, but of Otho Hull individually, against whom they hold a judgment for the amount of the latter claim. In their capacity, as separate creditors of Otho Hull, they have the undoubted right to assail the conveyance in question. The distribution of the fund is quite another question, but that is not now before us.

We have not deemed it necessary to discuss the question

of Otho Hull's separate indebtedness to the appellees. The proof in the record, including his confession of judgment upon the claim which the appellees asserted against him individually, is quite sufficient to set that controversy at rest.

As we have found no error in the decree appealed from, it will be affirmed with costs.

> *Decree affirmed with costs above*
> *and below.*

(Decided February 27th, 1895.)