WILSON BROTHERS ET AL *v.* COOEY, Assignee

[No. 376, September Term, 1967.]

*Decided November 12, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*K. J. Mackley,* with whom were *Ottinger, Mackley & Gil-
bert* on the brief, for appellants.

*Jacob V. Berkson* and *Edward W. Cooey,* with whom were
*Fred C. Wright, III* and *Cooey, Berkson & Wright* on the
brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

On 18 January 1965, Holiday Barn, Inc. (the Barn) took
title to an unimproved lot fronting 180 feet on the Hagerstown-
Smithsburg Pike with a depth of 150 feet, theretofore owned
by Holiday Acres, Inc. Immediately thereafter the Barn mort-
gaged the lot to Colonial Estates, Inc. (Colonial), to secure a
loan of $110,000. On the same day, Colonial assigned the mort-
gage to Farmers and Mechanics National Bank of Frederick
(Farmers and Mechanics), and on the following day borrowed
$71,200 from the bank. On 11 February 1965, Colonial bor-
rowed an additional $31,000 from Farmers and Mechanics,
thus increasing its total indebtedness to $102,200. These two
loans were evidenced by Colonial's notes, guaranteed by Her-
man F. Stouffer,[1] president of Colonial (who also presided over

1. Mr. Stouffer and Colonial are no strangers to this Court,
*Crossley v. Hartman,* 248 Md. 196, 235 A. 2d 743 (1967). Mr. Stouffer
now resides at the Maryland Penitentiary where, according to
counsel for appellants, he is an instructor in commercial law.

the destinies of the Barn and Holiday Acres) and his wife, and were secured by a collateral pledge of the Barn's mortgage and of three other mortgages owned by Colonial, hereafter referred to as the Ramsey, Oden and Nixon mortgages, the principal amounts of which were $14,000, $3,800 and $10,000 respectively.

Sometime after the borrowing, the Barn constructed a small shopping center on the mortgaged premises.[2] In July of 1966 the appellants (the Lienors) filed mechanics' liens against the shopping center in the following amounts: Wilson Home Supply Co., Inc., $7,379.72; Wilson Brothers, $21,834.00; Hagerstown Paint and Glass Company, $1,282.19.

By the time the shopping center was completed, Colonial had defaulted on its loan, and the Barn, on its mortgage. Farmers and Mechanics assigned the Barn's mortgage to Cooey, the appellee, for foreclosure proceedings which were instituted by Cooey. On 15 November 1966 the Barn's property was sold at public sale for $51,991.06 (including a proration of county and state taxes in the amount of $991.06) and the sale was ratified on 12 December 1966.

On 17 January 1967, shortly after the ratification of the sale, Maryland National Bank (Maryland National) intervened in the foreclosure proceedings. In its petition, it recited that on 25 January 1966, more than a year after the $110,000 mortgage had been given, the Barn had executed and delivered to Colonial what purported to be a $151,000 first mortgage on the same property which had been mortgaged in 1965. The new mortgage had been immediately assigned to Maryland National as security for a loan of $60,000 made to Colonial. Relying on its rights as the holder of the 1966 mortgage, Maryland National claimed the proceeds of the foreclosure sale.

A day later, the Lienors intervened in the foreclosure proceedings. In their petitions, each of them asked that:

> "All recorded mechanics liens filed against the realty foreclosed herein be consolidated in these proceedings and be adjudicated as to validity and amount *prior to*

2. The parties stipulated that construction had not commenced "by the end of January, 1965."

*distribution of any surplus remaining after payment of all amounts due the plaintiff, the senior lienor."* (Emphasis added)

Later, the auditor's first account was filed, which provided that the proceeds of sale in the hands of the assignee for foreclosure be first charged with the payment of expenses of the sale; then, with the satisfaction of the Farmers and Mechanics's claim, and that the remaining proceeds of $941.60 be distributed to Maryland National.

The Lienors filed exceptions to the auditor's account in which they said:

"The auditor erred in allowing $941.60 to be paid to the Maryland National Bank in partial satisfaction of its mortgage dated and recorded on January 25, 1966, in the principal amount of $60,000.00. Your Orators have each filed mechanic's liens which are duly and seasonably recorded among the records of the Clerk of the Circuit Court for Washington County, as recited in the petitions to share in the proceeds of the mortgage surplus in this case as well as to have the mechanic's liens adjudicated as to validity and priority. *Your Orators credibly believe that the mechanic's liens on these premises are liens prior in time to the second mortgage lien held by the Maryland National Bank and that any surplus from this sale is properly payable to the holders of the mechanic's liens rather than the second mortgagee.*

"The auditor erred in determining that $46,998.08 is payable to the Farmers and Mechanics National Bank of Frederick, Maryland, because *your Orators credibly believe that the actual indebtedness on the mortgage which has priority over the holders of the mechanic's liens is substantially less than the amount recited in the affidavit of indebtedness filed by the Farmers and Mechanics National Bank in this case."* (Emphasis added)

After hearing the exceptions, the chancellor entered a decree on 4 August 1967 holding the Farmers and Mechanics's mort-

gage to be a first lien; directing that expenses be a first charge on the proceeds of sale; ordering that the Farmers and Mechanics's claim for principal and interest, after taking credit for the Oden mortgage, be satisfied; and directing that any balance be held subject to the further order of the court.[3]

The Lienors have appealed from this decree. Their basic contention is that the Farmers and Mechanics's mortgage was taken for future advances and is therefore valid; or, alternatively, if the bank's mortgage is valid, that there should be a marshalling of the assets held by the bank.

An examination of the auditor's second account, filed in conformance with the decree of 4 August, points up the difficulty confronting the Lienors if they cannot prevail over the Farmers and Mechanics's claim. By the time the second account was stated, the unpaid principal amount of Colonial's obligation to Farmers and Mechanics, originally $102,200, had been reduced to $40,120.95 by (i) a $50,000 repayment on 19 April 1965; (ii) $8,475.98 received in the foreclosure of the Ramsey mortgage, held as collateral; and (iii) a credit for amounts received and to be received in satisfaction of the Oden mortgage, also held as collateral. Unpaid interest amounted to $4,788.64 on 28 August, with the result that the total amount of the Farmers and Mechanics's claim was $44,909.59. Expenses of the foreclosure sale had totalled $5,824.67, so that after satisfying the Farmers and Mechanics's claim and meeting expenses there remained in the hands of the assignee for foreclosure a balance of $1,256.80, the amount being held subject to order of court.

The Lienors point to the provision of Maryland Code (1957, 1964 Replacement Volume) Art. 66, § 2:

> "* * * No mortgage to secure future loans or advances shall be valid unless the amount or amounts of the same and the times when they are to be made shall be specifically stated in said mortgage; * * *"

and say that since it was uncontroverted that no money passed from Colonial to the Barn, and that the proceeds of Colonial's

---

3. Maryland National, which had excepted to the auditor's first account, did not appeal from the decree.

loan never reached the Barn, the mortgage was invalid as to subsequent creditors of the Barn. They rely on *Groh v. Cohen,* 158 Md. 638, 149 A. 459 (1930) ; *Baltimore High Grade Brick Co. v. Amos,* 95 Md. 571, 52 A. 582 (1902) and *In re Shapiro,* 34 F. Supp. 737 (D. Md. 1940) *aff'd* 118 F. 2d 348 (4th Cir. 1941).

The difficulty with this contention is that the rule which the Lienors seek to invoke applies only as between a mortgagor (or his creditor) and the mortgagee.

Watkins, *Maryland Mortgages for Future Advances,* 4 Md. L. Rev. 111 (1940) points out that while mortgages for future advances were good at common law, the practice of using such mortgages to promote fraudulent or preferential arrangements between lender and borrower which were prejudicial to creditors became widespread in Maryland and led to the adoption of Chapter 50 of the Laws of 1825, the statutory progenitor of Art. 66, § 2. There are several exceptions to the sanction of invalidity imposed by the statute, one being "* * * mortgages to indemnify the mortgagee against loss from being endorser or security * * *." Our predecessors were not persuaded by the ingenuity of borrowers who contrived to come within the letter but not the intent of the law by relying on an instrument which masqueraded as an indemnity mortgage but actually secured future advances. *Groh v. Cohen, supra.*

In form, the Barn's mortgage was not an indemnity mortgage. The fact that Maryland documentary stamps in an amount of only $99.00 were affixed was an intimation that it might have been a purchase money mortgage. Code, Art. 81, § 277 (a), (b). The chancellor concluded that the Barn's mortgage was not a mortgage for future advances, categorizing the mortgage as "one made as collateral for notes" without formally determining that the mortgage qualified as an indemnity mortgage permitted by Code, Art. 66, § 2. Under our view of the case, we need neither accept nor reject this conclusion since the result reached by the lower court can be supported on other grounds.

The cases relied on by the Lienors deal with the rights of mortgagors (or creditors of mortgagors) and of mortgagees under mortgages which are unsupported by consideration or fail

to meet statutory requirements. However, once an assignment of a mortgage is made to a bona fide purchaser for value without notice, an entirely different set of rules comes into play. *Groh v. Cohen, supra,* dealt only tangentially with the rights of an assignee who had notice of the fraudulent scheme.

> "While ordinarily the assignee of a mortgage cannot occupy the position of *bona fide* holder for value as against the mortgagor, yet he may occupy such position as against creditors of the mortgagor. Even though the mortgage was gotten without consideration by the mortgagee and could, therefore, be set aside by the mortgagee even in the hands of an assignee, yet if the mortgage gets into the hands of a *bona fide* assignee for value, who has no notice of lack of consideration, it will be good as against creditors of the mortgagee." Ginsberg, *Mortgages and Other Liens in Maryland* (1936) at 231.

To the same effect, Glenn, *Mortgages* (1943) § 324 at 1361-62; 37 Am. Jur. *Mortgages* § 1235 (1941). *See also* 80 A.L.R. 395.

In *Economy Savings Bank v. Gordon,* 90 Md. 486, 45 A. 176 (1900) Atkinson gave Steers a mortgage to secure a purported loan of $15,000.00. Economy Savings Bank loaned Steers $5,000.00 and took an assignment of the mortgage as collateral. There was no testimony which would support a conclusion that Atkinson's mortgage was supported by consideration. When creditors of Atkinson who had extended credit subsequent to the mortgage attacked its validity, this Court, speaking through Judge Schmucker, said:

> "The mortgage was not given to secure an actual indebtedness of fifteen thousand dollars as it professes on its face to have been. Its execution was evidently a means adopted by the parties to it to clothe Steers, the mortgagee, with the appearance of a good title to a large debt secured by a valid mortgage in order to enable him to raise money upon it. It was not fraudulent in the sense that its execution had been procured by fraud, misrepresentation or constraint prac-

ticed on the owner of the land who executed it, as was the case in *Central Bank v. Copeland,* 18 Md. 305, and *The Cumberland Coal and Iron Co. v. Parrish,* 42 Md. 598, in each of which the *defrauded mortgagor* was protected in equity against the assignee of the fraudulent mortgage. In the present case the execution of the mortgage was the voluntary and deliberate act of the mortgagor from which he had no equity to be relieved, even as against the mortgagee. *Snyder v. Snyder,* 51 Md. 77; *Cushwa v. Cushwa,* 5 Md. 44. We have, therefore, no question before us of subjecting the rights of the appellant as assignee of the mortgage to any equities to which the assignor would have been liable *in favor of the mortgagor,* for here it is plain that there were no such equities." (Emphasis in original) 90 Md. at 502.

and continued:

"If the mortgage in the present case had been made directly from Cecil R. Atkinson to the appellant [the Savings Bank] no question could be made by Atkinson's creditors as to the appellant's lien upon the mortgaged property to the extent of the money advanced *bona fide* upon the faith of the property at the time the mortgage was made. When, therefore, Atkinson clothed Steers with the appearance of a good mortgage title of record to the property, for the purpose of enabling him to raise money upon the mortgage, and the appellant, relying upon this appearance of good title in Steers, after a careful examination of the public records and a failure to find any prior incumbrances upon the property, parted with its money in good faith, it is entitled to the favor of a Court of Equity in the consideration of the relative equities of the parties to the controversy. This Court in *Seldner v. McCreery,* 75 Md. 296, said, 'where title is perfect on its face and no known circumstances exist to impeach it, or put a purchaser on inquiry, one who buys *bona fide* and for

value, occupies one of the most highly favored positions in the law.' " *Id.* at 504.

\* \* \*

"This Court has frequently been called upon to assert and define the rights of the creditors of a grantor as against a conveyance made by him which, by reason of inadequacy or want of consideration or even by design, operated to hinder, delay or defraud them. The Court has not hesitated to strike down such conveyances at the suit of the creditor, holding that one cannot make a voluntary conveyance of his property as against the rights of subsisting creditors, nor can he, as against such creditors, sell it for a consideration that bears no adequate relation to its real value. When, however, in such cases the rights of the parties, even if they were the immediate grantees under the conveyance, who had in good faith parted with value in reliance upon the conveyance, have had to be measured against those of the creditors, it has uniformly been held that in order to do full justice to all the parties in such cases a Court of Equity in setting aside the deed will allow it to stand as security for the consideration actually paid and apply the balance to the payment of the vendor's debts. These propositions were distinctly upheld in the cases already cited of *Cone v. Cross,* [72 Md. 102, 19 A. 391 (1890)], *Hull v. Deering,* [80 Md. 424, 31 A. 501 (1895)], *Hinkle v. Wilson* [53 Md. 287 (1880)] and *Worthington v. Bullitt,* [6 Md. 172 (1854)]." *Id.* at 505-06.

In the final analysis, the same equities which our predecessors balanced in *Economy Savings Bank* are present in the case before us. Farmers and Mechanics loaned money and took as collateral what it assumed to be a valid mortgage after having examined the land records. The Lienors had constructive notice of the existence of the mortgage debt at the time they extended credit. While a case can be postulated where an assignee, because of notice, of insufficient consideration, or of lack of good faith might wholly or partially lose the protection accorded an

innocent assignee for value, the lack of diligence exhibited by Farmers and Mechanics, about which the Lienors complain, is not sufficient to tip the scales. Farmers and Mechanics exercised reasonable prudence, and that is enough. An assignee for value of a mortgage which appears valid on its face, who has no notice of irregularity or reason to suspect it, is chargeable with what appears in the land records but is not to be put to the broader investigative burden customarily shouldered by the mortgagee. Consequently, the Barn's mortgage, although invalid as to Colonial, was valid as to Farmers and Mechanics, to the extent it parted with valuable consideration. Any balance remaining after the satisfaction of the bank's claim is distributable to the owner of the equity of redemption (the Barn), subject, however, to the claims of its creditors.

In the careful and well considered opinion filed by the chancellor below, considerable emphasis is laid on the inconsistent positions urged by the Lienors. The petitions which they filed on 18 January 1967, quoted earlier in this opinion, were intended to fend off the attack mounted by Maryland National Bank. At that time, the Lienors recognized Farmers and Mechanics as the holder of a lien senior to theirs. In their exceptions to the first auditor's account, the Lienors challenged the amount, but not the priority of the Farmers and Mechanics's claim. Not until later (apparently at the time of the hearing on exceptions) did they challenge the validity of the Barn's mortgage. Although we do not reach this point, estoppel by admission or by pleading is recognized in Maryland, *Stone v. Stone,* 230 Md. 248, 253, 186 A. 2d 590 (1962), quoting 19 Am. Jur. *Estoppel* § 50 (1939) :

> "Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action." At 650.

*See also, Mobberly v. Mobberly,* 60 Md. 376 (1883).

The chancellor also concluded that the validity of the Farm-

ers and Mechanics's mortgage, if it were to be questioned, should have been challenged by exceptions to the ratification of the sale and not by excepting to the auditor's account. *Albert v. Hamilton,* 76 Md. 304, 25 A. 341 (1892) held that the equity court, then vested by statute (Code, Art. 66, § 9) with "full power to hear and determine any objections which may be filed against the sale" had power to hear objections not only going to the manner in which the sale was conducted, but reasons why the mortgagor's title should not pass, which would naturally include an attack on the validity of the mortgage. Certainly the scope of the hearing has not been narrowed by Maryland Rule W 74 e, which has supplanted the former statutory provision relating to ratification. The ratification proceeding relates to title, and not proceeds.

The failure of the Lienors to except to ratification does not preclude their assertion of a claim against the proceeds of sale, however. Rule W 75 a (which is derived from former Code provision, Art. 66, § 10) provides:

> "a. *Distribution of Surplus.*
>
> Upon a sale of mortgaged property pursuant to this Subtitle, a person claiming an interest in the equity of redemption may apply to the court ratifying the sale to have the surplus of the proceeds of sale, after payment to the mortgagee of his claim and expenses, paid over to such person, or so much thereof as will satisfy his claim, and the court shall order distribution of such surplus equitably among the claimants thereto."

This was the remedy which the Lienors chose to pursue, and it was a proper one, since they had not attacked the validity of the mortgage in the ratification proceeding. *See, Plaza Corp. v. Alban Tractor Co.,* 219 Md. 570, 151 A. 2d 170 (1958).

Finally, the Lienors say that there should be a marshalling of assets in the hands of Farmers and Mechanics, in order that collateral held by the bank in excess of what is needed to satisfy its claim should be made available to the Lienors. The assignee for foreclosure contends that this has already been accomplished when the bank voluntarily applied the proceeds of the foreclosure of the Ramsey mortgage and credited the prin-

cipal amount of the Oden mortgage in reduction of its claim. Only the Nixon mortgage, of uncertain value, now remains in the hands of the bank. Since the Farmers and Mechanics was not a formal party to the foreclosure action, the Lienors may properly raise this point in another proceeding. We intend that our disposition of this case shall be without prejudice to any right which may later be asserted by the Lienors in this regard.

*Decree affirmed; costs to be paid by appellants.*