## COPENHAVER, ET AL. *v.* BEERS BROTHERS, INC.

[No. 361, September Term, 1968.]

*Decided July 8, 1969.*

588

The cause was argued before HAMMOND, C. J., and MARBURY, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Hal Lackey*, with whom was *Hal I. Lackey* on the brief, for appellants.

*Samuel Gordon*, with whom were *Gordon & Perlis* and *S. Michael Pincus* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

William K. Copenhaver and F. Moran McConihe (the Trustees), trustees under a deed of trust from Hillandale Medical Corporation (Hillandale) are valiantly resisting the efforts of Beers Brothers, Inc. (Beers) to collect a $15,000 unpaid balance of real estate brokerage commissions from the proceeds of a foreclosure sale conducted by the Trustees. We shall affirm the order of the Circuit Court for Montgomery County (Levine, J.) which allowed the Beers claim.

On 16 January 1965, Burbank Developers, Inc. (Burbank) contracted to sell a tract of some 107 acres to Hillandale for $376,800. The contract provided that Burbank would pay to its broker, Beers, a 6% commission on the sale price. Since the contract also contemplated the payment of $90,000 in cash at settlement, and the payment

of the balance of $286,800 over a period of six years, the deferred payments to be secured by a deed of trust, a provision was added that "[t]he agent, Beers Brothers, Inc., agrees to receive real estate fee on a basis of 6% of monies received by sellers." Beers was not a party to the contract, but confirmed this arrangement in a letter written several days after the signing of the contract to two of the owners of Burbank, Tom and Tracy Coleman (the Colemans).

Settlement was had on 16 July 1965, at which time Hillandale delivered to Burbank its note for $286,803, being the balance of purchase price, which provided for the payment of interest annually at the rate of 6%, commencing on 16 July 1966, and for annual payments in reduction of principal beginning on 16 July 1967.

Immediately after settlement, the Hillandale note was deposited for collection with Potomac National Bank. The letter of transmittal was written on Burbank's letterhead, but was signed by Herman Schmidt and the Colemans:

"Burbank Developers, Inc.
BUILDERS and DEVELOPERS

963 SELIM ROAD
SILVER SPRING, MD.
Juniper 9-6022
National 8-9257
July 19, 1965

Potomac National Bank
Potomac, Maryland
Gentlemen:

We hand you herewith for collection our first trust note made by Hillandale Medical Corporation in the sum of $286,803.00 bearing even date herewith, secured by 107.685 acres, known as Dr. Lyons farm, on River Road, Montgomery County, Maryland.

You are hereby requested to pay to Beers Bros.,

Inc. 6% of principal payments received on said deed of trust when, as and if said payments are made, and deduct said 6% from the amount due.

Very truly yours,
/s/ Herman Schmidt

Herman Schmidt
/s/ Thomas L. Coleman

Approved & accepted
Beers Bros. Inc.
 by [illegible]

Thomas L. Coleman
/s/ Tracy O. Coleman

Tracy O. Coleman"

Hillandale had defaulted in its payments on the note by 9 June 1967, and the Trustees instituted foreclosure proceedings. On 16 August 1967, the property was sold at public sale for $250,000 to Herman Schmidt, acting in his own behalf and as agent for the Colemans. The Trustees returned their report of sale, and Beers filed its claim for $15,000, representing a commission of 6% on the $250,000 sale price. The sale was ratified, and the case referred to an auditor, who filed a report in which the Beers claim was neither allowed nor disallowed. Beers countered with exceptions to the auditor's report, and the case came on for hearing. No testimony was taken, the matter being submitted on argument and exhibits admitted by stipulation. The lower court allowed the Beers claim, and the Trustees have appealed, contending that only a judgment or lien creditor of Burbank would be entitled to have his claim satisfied. The court below, quite properly we think, drew a sharp distinction between the property, on the one hand, and the proceeds of sale, on the other. While it is generally true that on foreclosure, only the claim of a judgment creditor or lienor whose judgment or lien antedates the mortgage can be satisfied, *Reigle v. Leiter,* 8 Md. 405 (1855); *Watson v. Bane,* 7 Md. 117 (1854); *Bell v. Brown's Admr.,* 3 H. & J. 484 (1810); *see also Wilson Bros. v. Cooey,* 251 Md. 350, 247

A. 2d 395 (1968), it is equally true that the holder of an equitable lien against the proceeds of sale is also entitled to be paid from the proceeds. *Moss v. Sperry,* 140 Fla. 301, 191 So. 531, 125 A.L.R. 909 (1939) ; 12 Am. Jur. 2d *Brokers* (1964) § 243 at 985.

As the court below observed:

> "An examination of the contract and exhibits leads us to the determination that the two provisions in the sales contract [fixing the rate and the manner of payment], read together with the letter of January 19th, constitute the agreement between Burbank and Beers Brothers, Inc., for the payment of the commission. As we have already concluded that the printed provision, which, in addition to fixing the rate of commission at 6% of the purchase price, authorized and directed the settlement agency to deduct the commission from the proceeds of sale and to make payment thereof to the broker, was an effective assignment giving rise to an enforceable lien, we are confronted with the question of whether the assignment is lost by the typewritten paragraph #9 [of the contract of sale] and the letter of the next day [Beers' letter of 19 January]. We construe their language to mean that since the broker would have been entitled to have its full commission paid from the $90,-000.00 received at settlement, it did not intend to surrender its lien rights by agreeing to have payment of the commission deferred."

Judge Levine went on to conclude that the fact that Schmidt and the Colemans were the purchasers at the sale did not make their bid any the less "proceeds of sale" or "monies received by sellers" as contemplated by the contract. See *Althouse v. Watson,* 143 Md. 650, 123 A. 47 (1923).

One final word as to the equities. The obligation to pay

592

commissions as the proceeds of sale were collected was assumed by Burbank, which held Hillandale's note. It seems to be conceded that Schmidt and the Colemans were the owners of Burbank and that Burbank was liquidated in July, 1967. Curiously enough, the Hillandale note is not an exhibit in the case. The auditor's report identifies Burbank as the "noteholder" and distributes to Burbank net proceeds of sale in the amount of $248,630.03. Regardless of whether the sale was made for the account of Burbank, or at the instance of Schmidt and the Colemans, it should have come as a surprise to no one under the facts as submitted that the proceeds of sale in the hands of the Trustees would be subject to an equitable lien for the amount of the Beers claim. *Leupold v. Weeks,* 96 Md. 280, 53 A. 937 (1903).

*Order affirmed; costs to be paid by appellants.*