*William L. Hallam v. New Life Evangelical Baptist Church, Inc., et al.*, No. 15, September Term, 2025. Opinion by Biran, J.

**MARYLAND RULES 14-211 AND 14-305 – FORECLOSURE – POST-SALE EXCEPTIONS –** The Supreme Court of Maryland held that a borrower who contends a lien is invalid or that a lienholder otherwise lacks the right to foreclose on property for any reason must raise such a defense under Maryland Rule 14-211 before the foreclosure sale occurs, provided the borrower knows or reasonably should know the pertinent facts giving rise to such a defense before the sale. A borrower may not raise as a post-sale exception a defense to foreclosure that it included or should have included in a pre-sale motion. These parameters apply regardless of who purchases the property at the foreclosure sale.

**MARYLAND RULE 14-211 – BORROWER'S OPTIONS UPON FAILURE TO COMPLY WITH A CONDITION OF AN ORDER STAYING A FORECLOSURE SALE –** The Supreme Court of Maryland held that, where a borrower fails to meet one or more conditions of an order staying a foreclosure sale, the borrower does not necessarily forgo the opportunity to obtain a ruling on the merits of their Rule 14-211 motion before the sale. A borrower in that situation has several options. First, the borrower may file a motion to extend the stay to allow the borrower more time to satisfy the condition in question. If the court enters an order denying the motion to extend the stay and/or enters an order revoking the stay, the borrower may note an interlocutory appeal under Md. Code Ann., Cts. & Jud. Proc. § 12-303(3)(i) (1973, 2020 Repl. Vol., 2025 Supp.). Second, if a borrower cures the non-compliance prior to a rescheduled foreclosure sale, the borrower may move for reinstatement of the stay and, if necessary, rescheduling of the merits hearing. Third, even if the borrower does not cure their non-compliance, the borrower may ask the court to go forward with a merits hearing prior to the rescheduled foreclosure sale. A circuit court is not required on its own initiative to reschedule a merits hearing for a date before the rescheduled sale.

Circuit Court for Baltimore City
Case No.: 24-O-22-001063
Argued: October 6, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 15

September Term, 2025

WILLIAM L. HALLAM

v.

NEW LIFE EVANGELICAL BAPTIST
CHURCH, INC., ET AL.

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

Opinion by Biran, J.
Watts, Eaves, and Killough, JJ., dissent.

Filed: June 22, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Maryland Rules provide a framework for the conduct of foreclosure proceedings that is designed to provide fairness and predictability to borrowers, lienholders, and purchasers of distressed assets. Under this system, borrowers may file challenges at three points in time after a lienholder dockets a foreclosure action: (1) before a foreclosure sale, by filing a motion to stay the sale and dismiss the action; (2) after a sale, by filing exceptions to ratification of the sale; and (3) after ratification of the sale, by filing exceptions to the auditor's statement of account.

Our prior cases have explained that the time to raise known and ripe defenses to the right to foreclose is pre-sale. In post-sale exceptions, borrowers ordinarily may only raise irregularities in the sale. However, we left open in two of our cases – *Bates v. Cohn*, 417 Md. 309 (2010), and *Thomas v. Nadel*, 427 Md. 441 (2012) – whether a borrower may assert a post-sale exception that the underlying debt was the product of fraud. We consider that question in this case.

Petitioner William Hallam, as Substitute Trustee (the "Trustee"), filed a foreclosure action against Respondents New Life Evangelical Baptist Church, Inc. ("New Life") and Turning Point, Inc. ("Turning Point") concerning parcels of real property in Baltimore City (the "Property"). Prior to the scheduled sale date, Respondents raised several defenses to foreclosure. Their chief contention was that the lender, Kevin Pfeffer, long ago had forgiven the debt upon which the foreclosure action was based. According to Respondents, Mr. Pfeffer persuaded New Life's senior pastor, Reverend Milton Williams, to maintain the satisfied mortgage in Baltimore City land records as a purported lien on the Property, supposedly to protect New Life from claims of potential creditors. The circuit court

scheduled a hearing at which the parties would litigate the merits of Respondents' defenses. The court stayed the foreclosure sale to allow the hearing to go forward. So far, so good.

But then Respondents failed to satisfy a property insurance condition that the circuit court had imposed on its grant of the stay. The court denied Respondents' motion to extend the time to obtain insurance, and the stay dissolved. The Trustee rescheduled the foreclosure sale for a new date. Respondents did not file an interlocutory appeal of the denial of their motion to extend the time to obtain insurance. Nor did they ask the circuit court to reschedule the merits hearing for a new date before the rescheduled sale date or to reinstate the stay after they allegedly obtained insurance. The sale occurred without the court having ruled on the merits of Respondents' defenses. Mr. Pfeffer purchased the Property at the sale.

In post-sale exceptions, Respondents again raised the alleged invalidity of Mr. Pfeffer's lien. They also added a new allegation of fraud, based on the contention that Mr. Pfeffer had never made a loan to New Life. The circuit court determined that Respondents could not raise these claims as post-sale exceptions and ratified the sale. Respondents appealed.

The Appellate Court of Maryland reversed and remanded for an evidentiary hearing at which Respondents would be permitted to prove post-sale that Mr. Pfeffer's asserted right to foreclose was the product of fraud. The Appellate Court based its ruling on three circumstances: (1) Respondents raised and preserved a defense sounding in fraud pre-sale; (2) Mr. Pfeffer, as opposed to a third party, purchased the Property at the sale; and (3) the

alleged fraud goes to the heart of Mr. Pfeffer's right to foreclose. We granted the Trustee's petition for certiorari.

We conclude that the circuit court correctly overruled Respondents' post-sale exceptions regarding Mr. Pfeffer's right to foreclose. If a borrower knows or reasonably should know of a defense to the right to foreclose in advance of the sale, the borrower must raise that defense in a motion to stay the sale and dismiss the action. This includes a claim that the lien is invalid for any reason, including satisfaction of the debt, forgery, or other fraud. A borrower may not raise as a post-sale exception a defense to foreclosure that it included or should have included in a pre-sale motion. This rule applies regardless of who purchases the property at the foreclosure sale.

Here, Respondents raised defenses sounding in fraud pre-sale. The circuit court initially scheduled a merits hearing and stayed the sale. However, the stay dissolved after Respondents failed to obtain the required insurance coverage. Respondents took no further action to obtain a ruling on the merits of their defenses before the sale, and the sale went forward. After the sale, Respondents could not raise their pre-sale defenses again as exceptions. Nor were Respondents permitted to raise their new fraud claim as a post-sale exception. Respondents knew or should have known the facts underlying that claim for more than 20 years. They had to raise that defense pre-sale as well.

Because Respondents are not entitled to any further hearing in the circuit court concerning Mr. Pfeffer's right to foreclose, we reverse the judgment of the Appellate Court.

# I

## Background

### A. Maryland's Rules Regarding Challenges to Foreclosure

1. <u>Pre-Sale</u>

After a lienholder brings a foreclosure action under Maryland law, the borrower, record owner, or certain other interested parties "may file in the action a motion to stay the sale of the property and dismiss the foreclosure action."[1] Md. Rule 14-211(a)(1).[2] In an action not involving residential property, a borrower must file a motion under Rule 14-211 no later than 15 days after first becoming aware of the action. *See* Md. Rule 14-211(a)(2)(B); Md. Rule 14-209(a). The motion to stay and dismiss must be under oath or supported by affidavit and must state with particularity the factual and legal basis of each defense that the borrower has to "the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action." Md. Rule 14-211(a)(3). The circuit court must deny the motion to stay and dismiss if the motion: (1) was untimely filed without good cause; (2) is not substantially in compliance with Rule 14-211's requirements; or (3) fails on its face to state a prima facie defense. Md. Rule 14-211(b)(1). Conversely, if the motion passes muster on these three points, "the court shall set the matter for a hearing

---

[1] For ease of reference, we will refer at times to any person who is entitled to challenge a foreclosure pre-sale or post-sale as a "borrower."

[2] This Court adopted Maryland Rule 14-211 in 2009. Before then, a borrower who sought to challenge a foreclosure pre-sale was required to file a motion for injunctive relief under former Maryland Rule 14-209.

4

on the merits of the alleged defense." Md. Rule 14-211(b)(2). "The hearing shall be scheduled for a time prior to the date of sale, if practicable, otherwise within 60 days after the originally scheduled date of sale." Md. Rule 14-211(b)(2)(C).

"If the hearing on the merits cannot be held prior to the date of sale, the court shall enter an order that temporarily stays the sale on terms and conditions that the court finds reasonable and necessary to protect the property and the interest of the plaintiff." Md. Rule 14-211(c)(1). These conditions "may include assurance that … the property will remain covered by adequate insurance"; in addition, the court may require the borrower to "provide reasonable security for compliance with the conditions it sets and may revoke the stay upon a finding of non-compliance." Md. Rule 14-211(c)(1).

After a hearing on the merits, if the court finds that the borrower "has established that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose in the pending action, it shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action." Md. Rule 14-211(e). "If the court finds otherwise, it shall deny the motion." Md. Rule 14-211(e).

2. Post-Sale

As soon as practicable, but no later than 30 days after a foreclosure sale, "the person authorized to make the sale shall file with the court a complete report of the sale and an affidavit of the fairness of the sale and the truth of the report." Md. Rule 14-305(a). Both the purchaser and the auctioneer are required to file affidavits averring to certain matters relating to the sale. Md. Rule 14-305(b), (c). After the report of sale is filed, "the clerk shall issue a notice containing a brief description sufficient to identify the property and stating

5

that the sale will be ratified unless cause to the contrary is shown within 30 days after the date of the notice." Md. Rule 14-305(d).

To show "cause to the contrary," a borrower may file exceptions to the sale. Md. Rule 14-305(e)(1). Exceptions must be in writing, "shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice issued pursuant to section (d) of this Rule or the filing of the report of sale if no notice is issued." Md. Rule 14-305(e)(1). "Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise." Md. Rule 14-305(e)(1).

After a borrower files exceptions to a foreclosure sale, the court "shall determine whether to hold a hearing on the exceptions but it may not set aside a sale without a hearing." Md. Rule 14-305(e)(2). The court must hold a hearing "if a hearing is requested and the exceptions or any response clearly show a need to take evidence." Md. Rule 14-305(e)(2). The court shall ratify the sale if: (1) the time for filing exceptions has expired and exceptions either were not filed or were filed but overruled; and (2) "the court is satisfied that the sale was fairly and properly made." Md. Rule 14-305(f). If the court is not satisfied that the sale was fairly and properly made, "it may enter any order that it deems appropriate." Md. Rule 14-305(f).

3. Post-Ratification

Upon ratification of a sale, the court may refer the matter to an auditor to state an account. Md. Rule 14-305(g). Exceptions to an auditor's report may be filed under Maryland Rule 2-543(g). A hearing may be held on such exceptions under Maryland Rule 2-543(h).

6

**B. This Case**

Rev. Williams and Mr. Pfeffer have known each other since at least 2000. Although the two are at odds now, the record reflects that for many years they had a close working relationship. New Life has been located at the Property[3] since at least the 1980s. Eventually, Turning Point – a substance abuse treatment center – also began operating at the Property.

1. The Disputed Mortgage Debt

On several occasions between 1987 and 1990, New Life borrowed funds from the Church Buildings Committee of Baptist Mission of North America, Inc. (the "Baptist Mission"). New Life executed notes made payable to the Baptist Mission evidencing these loans (the "Original Notes"). The Original Notes were secured by deeds of trust on the Property. At some point prior to August 24, 2000, Mr. Pfeffer purchased the Original Notes from the Baptist Mission.[4] The Baptist Mission assigned the deeds of trust securing the Original Notes to Mr. Pfeffer. Thus, Mr. Pfeffer became the holder of the liens on the Property.

---

[3] There are discrepancies in the briefs and the record about which parcels of land comprise the Property. The report of sale filed under Maryland Rule 14-305(a) states that three parcels were sold at foreclosure: 2401 East North Avenue, 2413-15 East North Avenue, and 2417 East North Avenue.

[4] The record does not contain documentary evidence of the amount Mr. Pfeffer paid to purchase the Original Notes. Mr. Pfeffer testified in a 2023 deposition that, to his recollection, he purchased the Original Notes for $30,000. Rev. Williams's recollection in 2023 was that Mr. Pfeffer paid "around $30,000" for the Original Notes.

On August 24, 2000, Rev. Williams, on behalf of New Life as the borrower, and Mr. Pfeffer as the lender, executed a new note (the "2000 Note") that was, in essence, a refinancing of New Life's debts now owed to Mr. Pfeffer. The 2000 Note stated that New Life and Mr. Pfeffer had agreed to consolidate the Original Notes into a single note, to include the principal balance of, and unpaid interest on, the Original Notes, which was said to total $500,000. Under the terms of the 2000 Note, New Life agreed to pay Mr. Pfeffer the principal sum of $500,000 at an annual interest rate of nine percent over a period of 30 years beginning September 1, 2000. New Life's monthly payment of principal and interest was to be $4,023.11. The 2000 Note was secured by a deed of trust dated August 24, 2000 (the "2000 Deed of Trust"), which encumbered the Property (with the 2000 Note, the "Mortgage Debt"). The 2000 Deed of Trust required that insurance against fire and other property damage be maintained on the Property.

On December 31, 2000, Mr. Pfeffer sent a letter to Rev. Williams informing him that New Life had "been delinquent" in making payments on the Mortgage Debt. Mr. Pfeffer stated that "the principal balance secured by the mortgage of $500,000 is hereby accelerated and declared immediately due and payable." Mr. Pfeffer continued:

> That's the bad news. The good news is that, due to significant investment gains I have experienced over the past couple years, I have decided to donate to the church all of the principal and interest owed to me under the [Mortgage Debt], which totals $516,092.44. Congratulations, the church is now debt free.

(Paragraph break omitted).

Mr. Pfeffer claims that his December 31, 2000 letter to Rev. Williams was merely an "offer" to forgive the Mortgage Debt. According to Mr. Pfeffer, after he sent the letter

8

to Rev. Williams, he and Rev. Williams agreed that the Mortgage Debt in fact would not be forgiven, but rather would remain in force. Mr. Pfeffer claims that he and Rev. Williams agreed that it would be in New Life's interest to have the Mortgage Debt remain outstanding for purposes of financing New Life was seeking at the time.

Rev. Williams agrees that he and Mr. Pfeffer decided the Mortgage Debt would remain visible to third parties, despite Mr. Pfeffer's December 31, 2000 letter. However, according to Rev. Williams, he and Mr. Pfeffer understood and agreed that Mr. Pfeffer, in fact, had forgiven the Mortgage Debt and therefore would not seek to collect on it. Rev. Williams says that Mr. Pfeffer led him to believe that this arrangement would provide New Life with a "blanket of protection" against potential creditors. Rev. Williams further claims that he was not "supposed to talk about" the fact that Mr. Pfeffer had forgiven the Mortgage Debt; rather, "[t]hat was supposed to be [their] secret."

On June 26, 2015, New Life sold its interest in the Property to Turning Point. The Purchase and Sale Agreement recited that Turning Point agreed to purchase the Property "subject to all existing mortgages." On the same day, Rev. Williams, on behalf of both New Life and Turning Point, and Mr. Pfeffer entered into a Subordination Agreement. The Subordination Agreement stated that Mr. Pfeffer agreed to subordinate his lien on the Property arising from the Mortgage Debt in favor of a deed of trust being granted by Turning Point to secure a $1.5 million loan it was obtaining from M&T Bank ("M&T").[5]

---

[5] Turning Point subsequently paid off the M&T loan. M&T released its deed of trust on the Property in 2020.

9

On December 31, 2018, New Life, Turning Point, Mr. Pfeffer, and a corporation controlled by Mr. Pfeffer called Clinic Management and Development Services, Inc. ("CMDS") executed what they referred to as the "Four Party Agreement."[6] As part of the Four Party Agreement, Mr. Pfeffer agreed to sell the Mortgage Debt to Turning Point upon completion of Turning Point's payment of the "Purchase Price." The Purchase Price included monthly payments to Mr. Pfeffer of $25,000 beginning on January 1, 2019, and ending on January 1, 2050. The Four Party Agreement provided that, as long as Turning Point made the required monthly Purchase Price payment of $25,000, Mr. Pfeffer would not demand any monthly payments on the Mortgage Debt that had become due in the past or would become due in the future.

Prior to the execution of the Four Party Agreement, New Life never made a payment to Mr. Pfeffer on the Mortgage Debt. From January 2019 through June 2022, Turning Point made monthly $25,000 payments to Mr. Pfeffer under the terms of the Four Party Agreement. Turning Point classified the $25,000 payments to Mr. Pfeffer in its Form 990 tax return for 2020 as expenses for "Mortgage Purchase."

In June 2022, Turning Point apparently was in the midst of financial problems. On June 20, 2022, Gerald Walsh, counsel for Turning Point, emailed Paul Kim, counsel for Mr. Pfeffer, about an "expense issue, the 25K monthly payment for the Mortgage purchase recorded on [Turning Point's] financial statements." Mr. Walsh asserted that the Mortgage

---

[6] On the next day, January 1, 2019, CMDS and Turning Point entered into a Management Services Agreement under which CMDS agreed to "operate and manage the day-to-day administrative aspects" of Turning Point's substance abuse treatment clinic.

Debt was satisfied, as evidenced by Mr. Pfeffer's December 31, 2000 letter. Thus, according to Mr. Walsh, "[t]here is no mortgage to purchase" and Turning Point "can no longer pay [Mr. Pfeffer] 25K each month to purchase the Mortgage." Mr. Kim replied: "[W]ith all due respect, I don't know why you keep raising this mortgage issue. We've discussed it, [Mr. Pfeffer] does not care about it, and it is not the reason why [Turning Point] is facing fiscal fatality. Please focus on the checks that are due today, and not this."

Turning Point subsequently ceased making monthly $25,000 payments to Mr. Pfeffer. Mr. Pfeffer deemed Turning Point in default under the Four Party Agreement, and directed the Trustee to seek foreclosure of the Property.

### 2. Foreclosure Proceedings in the Circuit Court

In November 2022, the Trustee filed an Order to Docket a foreclosure action in the Circuit Court for Baltimore City relating to the Property. He listed New Life and Turning Point as the defendants. The Trustee scheduled a foreclosure sale for January 11, 2023.

On January 6, 2023, Respondents filed a Petition for Temporary Restraining Order and Request for Hearing, which the circuit court construed as a motion to stay and dismiss the foreclosure action under Maryland Rule 14-211(a). In their motion, Respondents alleged, among other things, that the Trustee had no authority to foreclose because Mr. Pfeffer had forgiven the Mortgage Debt prior to the parties signing the Four Party Agreement. Respondents also asserted that a delay of the sale would not harm Mr. Pfeffer's interests.

The Trustee filed an opposition to Respondents' motion in which he disputed Respondents' contention that Mr. Pfeffer had forgiven the Mortgage Debt. He pointed to

11

several post-2000 documents in which the parties referred to the Mortgage Debt as encumbering the Property, including the Subordination Agreement in 2015 and the Four Party Agreement in 2018. Responding to the contention that a stay would not harm Mr. Pfeffer, the Trustee reported Mr. Pfeffer's understanding – as set forth in an attached affidavit – that the Property was not covered by fire or other property insurance, contrary to the terms of the 2000 Deed of Trust.

The circuit court held an initial hearing on January 10, 2023. Counsel for Respondents told the court that Respondents were not alleging that Mr. Pfeffer committed fraud in obtaining Rev. Williams's agreement to keep the Mortgage Debt on record. Regardless, the circuit court determined that Respondents had sufficiently alleged prima facie defenses to warrant a hearing on the merits. Because it was not possible to hold that hearing prior to the foreclosure sale (which was scheduled for the next day), the court decided to stay the sale.

The court then brought up the subject of conditions it should impose to protect Mr. Pfeffer's interests pending the merits hearing, focusing on the alleged lack of property insurance: "This insurance issue I saw, the insurance money not being paid, is very, very serious…. [I]t needs to be insured." The Trustee agreed that "first and foremost" among any conditions "ought to be proof that this property is insured." The Trustee also requested that the court require Respondents to post a bond to ensure reimbursement of Mr. Pfeffer's expenses in the event the foreclosure sale were to go forward.

When asked by the court whether there was insurance on the Property, Rev. Williams replied that "[t]he property insurance is in force." In response to the court's

question about the amount of property insurance coverage, Rev. Williams said "I think it's in excess of $1 million," but he explained that he was waiting to receive verification of the amount from a member of his staff. Rev. Williams was unable to provide further information about property insurance coverage during the hearing.

On January 13, 2023, the circuit court issued a Temporary Stay Order. The order recited that the foreclosure sale "is stayed pending further Order of the Court or failure of the Borrower or the Property Owner to satisfy the 'Conditions,' as defined below[.]" The "Conditions" were that, on or before January 24, 2023, Respondents file with the court: (1) proof that the Property is insured against fire, property damage, and general hazards by an insurance policy or policies providing not less than $1.25 million of coverage; and (2) a bond in the amount of $15,000. The stay order further provided:

> If [Respondents] fail to satisfy the Conditions on or before January 24, 2023, upon the filing by the Trustee with the Court of a notice that the Conditions have not been satisfied the stay of the sale of the Property shall dissolve without further Order of the Court. The right of [Respondents] to seek to reinstate the stay upon a showing that the Conditions were satisfied is reserved[.]

The court set the merits hearing for April 17 and 18, 2023.[7]

---

[7] As noted above, Maryland Rule 14-211(b)(2)(C) provides that a hearing on the merits of a pre-sale challenge "shall be scheduled for a time prior to the date of sale, if practicable, otherwise within 60 days after the originally scheduled date of sale." Under this provision, the merits hearing on Respondents' motion should have been scheduled for no later than 60 days after January 11, 2023, the originally scheduled date of the foreclosure sale. At the January 10 hearing, the court indicated that the merits hearing would be held beginning on March 3. The record does not reflect why the court ultimately set the merits hearing beyond the 60-day deadline.

On January 24, 2023, Respondents filed a Motion to Extend Time to Comply with Conditions, requesting seven additional days to provide proof of property insurance.[8] Respondents represented that Rev. Williams had incorrectly stated at the January 10 hearing that the Property presently carried property insurance. Respondents advised that they were in the process of obtaining the required coverage, and that they expected to be able to provide proof of such insurance within seven days. They also stated that "[i]f this motion is denied, foreclosure proceeding [sic] would begin anew and an actual foreclosure would not occur for at least 30 days. The properties will be insured well before then."

The Trustee opposed Respondents' motion to extend the time to comply with the insurance condition. Among other grounds for denial, the Trustee argued:

> Had the sale of the … property occurred as scheduled on January 11, 2023, the risk of loss to the property would have been assumed by the successful bidder on that date. Had something happened to the property after the date of sale, the successful bidder would still have been required to pay its full bid price. [Mr. Pfeffer] and [Turning Point] would have received what the bidding process established that the property was worth, whether or not there was insurance. Now, two weeks have passed in which neither [Turning Point] nor [Mr. Pfeffer] would realize the value of the property if some casualty had occurred and [Respondents] are asking the Court for permission to leave the property unprotected for yet another week, based on an "expectation" of someone who already told the Court falsely that there was insurance that insurance will be obtained during that additional week.

On January 25, 2023, the circuit court denied Respondents' motion to extend the time to comply with the insurance condition. On January 26, 2023, the Trustee filed a Notice of Failure to Satisfy Conditions to Stay of Sale and Dissolution of Stay. The Trustee's notice recited that, as a result of Respondents' failure to comply with the

---

[8] Respondents timely complied with the condition to file a $15,000 bond.

14

insurance condition, the stay of the foreclosure sale "is dissolved." The Trustee subsequently rescheduled the foreclosure sale for March 1, 2023, and provided Respondents and their counsel with notice of the new sale date on February 9 and 10, 2023, respectively.

Respondents did not appeal the denial of their motion for extension of time or the dissolution of the stay. They also did not ask the circuit court to reschedule the merits hearing for a date prior to the new sale date of March 1. Nor did they move to reinstate the stay after they allegedly obtained the required insurance.[9] The sale went forward as scheduled on March 1, 2023. Mr. Pfeffer was the only bidder; he purchased the Property for $435,000. On March 3, 2023, the Trustee filed the report of sale.

Respondents filed timely exceptions to the foreclosure sale. In their exceptions, Respondents repeated the claims they had made pre-sale relating to the alleged invalidity of Mr. Pfeffer's lien. Following a hearing, the court issued an order on May 10, 2023, overruling these exceptions on the ground that Respondents could not raise these claims post-sale. However, the circuit court scheduled a hearing for June 1, 2023, at which Respondents would be permitted to challenge the sufficiency of the sale price and any other alleged irregularities with respect to the sale.

On May 19, 2023, Respondents filed a motion for reconsideration of the circuit court's May 10 order. Respondents asserted that they had recently learned through taking

---

[9] In their brief, Respondents assert that they "obtained the required property insurance about two weeks after the Court's initial deadline." Two weeks after the court's initial deadline of January 24 was more than two weeks before the rescheduled foreclosure sale date of March 1.

15

Mr. Pfeffer's deposition that the 2000 Note involved no loan from Mr. Pfeffer to New Life. In addition, for the first time, Respondents characterized Mr. Pfeffer's alleged conduct as fraudulent.

On June 1, 2023, the circuit court held a hearing on Respondents' motion for reconsideration and their remaining exceptions to the sale. The court found that it was irrelevant that Mr. Pfeffer did not lend any additional funds to New Life in connection with the consolidation and restatement of the Original Notes in the 2000 Note. The court determined that Respondents' claims regarding the invalidity of the lien, even if characterized as involving fraud by Mr. Pfeffer, were not properly raised as post-sale exceptions. Thus, the court denied the motion for reconsideration of its May 10 order.

In addition, after an evidentiary hearing, the circuit court overruled Respondents' exception to the sale based on the alleged insufficiency of the foreclosure sale price. The court found that the sale price of $435,000, which was greater than 50 percent of the assessed value of the Property, did not shock the conscience.

The circuit court issued a Final Order of Ratification of Sale on June 1, 2023. The court stayed the ratification order pending appeal.

3. Appeal

Respondents appealed. They argued that the circuit court erred in overruling their post-sale exceptions concerning the validity of Mr. Pfeffer's lien and his alleged fraudulent acts. Respondents also contended that the circuit court incorrectly overruled their exception concerning the sale price.

16

In an unreported opinion, a divided panel of the Appellate Court of Maryland reversed the circuit court's ratification order and remanded the case to the circuit court for an evidentiary hearing at which Respondents would attempt to prove their fraud allegations. *New Life Evangelical Baptist Church, Inc. v. Hallam*, No. 860, Sept. Term, 2023, 2025 WL 79643, at *4 (Md. App. Ct. Jan. 13, 2025).[10]

The Appellate Court recognized that this Court previously had held that borrowers challenging foreclosure generally must assert all known and ripe defenses to foreclosure before the sale. *See id.* at *4. However, as the Appellate Court explained, *Bates v. Cohn* and *Thomas v. Nadel* left open the possibility that a borrower may assert a post-sale exception that the deed of trust was itself the product of fraud. *Id.*

The Appellate Court opined that three factors warranted the conclusion that Respondents' "defense of fraud remains viable post-sale." *Id.* at *5. First, Respondents raised and preserved a defense sounding in fraud pre-sale. *See id.* at *3 n.7, *5.[11] The Appellate Court emphasized that the circuit court had found at the initial hearing that Respondents were entitled to a hearing on the merits of their defenses. *Id.* at *5. The

---

[10] The Appellate Court did not reach the question concerning the adequacy of the sale price. *See id.* at *4 n.10.

[11] In this regard, the Appellate Court reasoned that the label Respondents attached to their defense pre-sale was not dispositive. The court observed that, starting with their first pleading in the circuit court, Respondents consistently sought to defend against the foreclosure action with their theory that Mr. Pfeffer had "used his position as New Life's financial advisor to dupe New Life into accepting a $500,000 mortgage for very little or (as it appears) no value." *Id.* at *3 n.7. The Appellate Court added: "Frankly, we aren't sure why [Respondents at the initial hearing] disclaimed that [they were] alleging fraud. Maybe [counsel] was just being reflexively polite or nonconfrontational." *Id.*

17

Appellate Court took no issue with the dissolution of the stay after Respondents failed to comply with the insurance condition. *See id.* However, the Appellate Court reasoned, "[t]he penalty for failing to satisfy the circuit court's conditions is revocation of the stay…. It does not … also result in a waiver of the borrower's defenses." *Id.*

Second, the fact that the purchaser at foreclosure was the lender and the person who allegedly defrauded Respondents, as opposed to a third party, favored a remand for a merits hearing. *Id.* at *6. The court observed that, as a policy matter, "courts are hesitant to allow post-sale claims so as not to have a chilling effect on willing third-party buyers." *Id.* That concern was not present in this case, according to the Appellate Court, because Mr. Pfeffer was the purchaser. *Id.*

Third, the Appellate Court pointed to the "scope of the fraud" Respondents had alleged. *Id.* The court contrasted this case with others where "desperate property owners … raise allegations of fraud with the hope that if they can just find a clerical error in the mortgage documents, they will be allowed to stay on their properties and the mortgage lender will be unable to recover the money it lent them." *Id.* at *6 n.16. In this case, "if proven, the fraud alleged would invalidate the underlying mortgage, and eliminate Pfeffer's right to foreclose." *Id.*

The Appellate Court was of the view that "the best way to analyze this case is as a post-sale challenge in which we find, as described above, three reasons that this case can fit within the tight confines permitted for post-sale challenges." *Id.* at *5 n.12. However, the Appellate Court provided an alternative theory that construed Respondents' post-sale exceptions as a continuation of their pre-sale motion to dismiss:

> Should a reviewing court find that the law is even more restrictive of post-sale challenges than previously expressed, such that not even these reasons are sufficient, we would hold that [Respondents'] was a pre-sale challenge. We would hold that while the circuit court did not err by revoking the stay when [Respondents] failed to obtain insurance, nothing about that action was intended to or in fact did waive [Respondents'] pre-sale challenges. As such, under this alternative method of analyzing this case, we would hold that Respondents' pre-sale challenges remain open and we would remand to permit the circuit court to hold a hearing on it, even now.

*Id.* Indeed, the Appellate Court continued, "it might be proper to characterize this as a pre-sale challenge whose resolution was simply delayed until after the sale." *Id.* at *6 n.14.

The dissenting member of the panel, the Honorable Glenn T. Harrell, Jr., would have affirmed the circuit court's overruling of Respondents' fraud-related exceptions. Judge Harrell observed that the consequence of Respondents' failure to secure insurance was that the stay was lifted, allowing the foreclosure sale to proceed. *Id.* at *7 (Harrell, J., dissenting). In Judge Harrell's view, this "failure to perfect [Respondents'] pre-sale opportunity to litigate [their fraud] claim (whether through negligence or otherwise) should be deemed a waiver of an assumed right to assert a virtually identical fraud claim as a post-sale challenge." *Id.* Judge Harrell further explained that "no modern reported Maryland case involved a litigant who, knowing pre-sale sufficient bases for a fraud claim, fails to pursue that claim pre-sale. The present case is a classic waiver/non-preservation situation. [Respondents are] not entitled to essentially a do-over opportunity post-sale." *Id.*

We granted the Trustee's petition for certiorari, *Hallam v. New Life Evangelical Baptist Church*, 490 Md. 431 (2025), to decide two questions:

19

1. Did the Appellate Court of Maryland err in holding that Respondents were able to raise their claim of fraud in post-sale exceptions filed pursuant to Maryland Rule 14-305(e)?

2. Did the Appellate Court of Maryland err in holding that Respondents had preserved their right to raise their claim of fraud post-sale where they had failed to perfect their right to litigate the same fraud claim pre-sale?

## II

## Standard of Review

The questions presented in this appeal are ones of law. Thus, our review is de novo. *See, e.g.*, *Balt. Police Dep't v. Open Justice Balt.*, 485 Md. 605, 644-45 (2023).

## III

## Discussion

We begin our analysis by summarizing Maryland case law regarding the time to challenge a lienholder's right to foreclose. We then address when and how a borrower must assert defenses to foreclosure based on fraud. Next, we consider a borrower's options when the stay of a foreclosure sale dissolves or is revoked for failure to comply with conditions of the stay. Finally, we apply the relevant principles to this case.

### A. Cases Concerning the Time to Challenge the Right to Foreclose

In a series of cases between 2005 and 2012, this Court and the Appellate Court analyzed the timing of challenges to a lienholder's asserted right to foreclose.

#### *Greenbriar*

In *Greenbriar Condominium, Phase I Council of Unit Owners, Inc. v. Brooks*, 387 Md. 683 (2005), a condominium council ("Greenbriar") initiated foreclosure proceedings after a unit owner, Clifford Brooks, failed to pay condominium assessment installments.

20

*Id.* at 687. Mr. Brooks did not file a motion under former Rule 14-209 prior to the foreclosure sale in question, at which Greenbriar was the purchaser. *See id.* at 700-01. In his post-sale exceptions, Mr. Brooks alleged, among other things, that Greenbriar and its appointed trustee fraudulently deprived him of his right of redemption by demanding excessive and unlawful payments as a condition of redemption and refusing his tendered payment before the sale. *See id.* at 703, 737. The circuit court invalidated the foreclosure sale on the ground that Mr. Brooks had tendered payment. *See id.* at 706-07.

We disagreed with the circuit court's rationale for invalidating the foreclosure sale, observing that if Mr. Brooks believed he had satisfied Greenbriar's lien by tendering payment before the foreclosure sale, he should have filed for an injunction prior to the sale. *Id.* at 736. We observed that Mr. Brooks's "obligation … was to prosecute his rights, not to sit on them." *Id.* at 740. We further explained:

> Generally, injunctions are to be filed prior to the action which they seek to forestall. The timing of this remedy is not elective. Were a post-sale injunction retroactively overturning a sale permitted, such a remedy would not only be counter to the logic and nature of injunctions, but would give rise to conflicts among the interested parties. The debtor might seek another bite at the apple, or some other junior lien holder might enjoin only if the sale fetched a price insufficient to satisfy his debt.

> The equities cannot be maintained – and are not intended to be maintained – *after* the foreclosure sale by any method other than the filing of exceptions. The nature of the exceptions may be to request that the Circuit Court take action relative to an audit that has been duly stated or even to set aside the sale due to irregularities in the sale process itself – but not to upset retroactively a sale properly held.

*Id.* at 740-41 (emphasis in original).

*Bierman*

In *Bierman v. Hunter*, 190 Md. App. 250 (2010), after Gary Hunter and Maria Hunter separated and Mr. Hunter moved out of the marital home (where Ms. Hunter and their minor children were still residing), Mr. Hunter executed a cash-out consolidation loan on the home. *Id.* at 253-54. Ms. Hunter claimed that her signature on a power of attorney under which the consolidation loan was consummated was a forgery. *Id.* at 254. She also claimed that she first learned about the consolidation loan in June 2006 when she received copies of the settlement papers, and that she received no money from the cash-out loan. *Id.* In the parties' divorce case, the court ordered Mr. Hunter to make the required payments under the consolidation loan; after Mr. Hunter failed to do so, the lender filed a foreclosure action on October 20, 2006. *Id.* Ms. Hunter received notice of the sale on October 27, 2006; the sale occurred on November 22, 2006. *Id.* Ms. Hunter did not file for an injunction prior to the sale. However, she filed post-sale exceptions in which she alleged that the power of attorney was a forgery. *Id.* The lender argued that Ms. Hunter was required to raise her fraud claim in a request for injunctive relief prior to the sale. *Id.* at 254-55. The circuit court sustained Ms. Hunter's exceptions and invalidated the foreclosure sale. *Id.* at 255.

The Appellate Court affirmed. Relying on cases that pre-dated the adoption of former Rule 14-209, the Appellate Court held that Ms. Hunter's ability to attack the validity of the deed of trust securing the consolidation loan was not limited to a motion to stay the foreclosure sale under then-Rule 14-209(b). *Id.* at 264. "As an equity court, the trial court had full power to hear and determine all objections to the foreclosure sale, 'which would naturally include an attack on the validity of the mortgage.'" *Id.* (quoting *Wilson Bros. v.*

22

*Cooey*, 251 Md. 350, 360 (1968)). The Appellate Court rejected the lender's argument under *Greenbriar* that Ms. Hunter was required to raise her objection prior to the sale: "[T]he holding in *Greenbriar* is a narrow one, focusing on the debtor's right of redemption when there is a dispute over the sum due and it is conceded that some sum is due and in default." *Id.* at 266. Unlike *Greenbriar*, *Bierman* involved an exception to a foreclosure sale based on the "underlying validity of the mortgage." *Id.* at 268. In the Appellate Court's view, pre-Rule 14-209 cases, such as *Wilson Bros. v. Cooey*, 251 Md. 350 (1968), which allowed post-sale exceptions challenging the validity of a lien, remained good law. *Id.* at 269. The Appellate Court did not base its ruling on the circumstance that Ms. Hunter's challenge sounded in fraud.

*Bates*

In *Bates v. Cohn*, the borrower, Sonja Bates, did not file a motion to stay the foreclosure sale and to dismiss the foreclosure action under Maryland Rule 14-211(a)(1). 417 Md. at 315-16. After the sale, Ms. Bates filed exceptions in which she contended that the lender's failure to comply with loan mitigation requirements rendered the sale not "fairly and properly made[.]" *Id.* at 316-17. Ms. Bates relied heavily on the Appellate Court's opinion in *Bierman*.

We held that Ms. Bates was required to raise her claim before the foreclosure sale. *Id.* at 324. We reasoned that *Bierman*'s reliance on older cases such as *Wilson Bros.* was misplaced, because those earlier cases "turn[ed] on interpretations of older, different, and more latitudinous versions of predecessors to Rule 14-305." *Id.* at 325. We "reaffirm[ed] the conclusion in *Greenbriar* that Rule 14-305 is not an open portal through which any and

23

all pre-sale objections may be filed as exceptions, without regard to the nature of the objection or when the operative basis underlying the objection arose and was known to the borrower." *Id.* at 327. We reiterated *Greenbriar*'s statement that "after a foreclosure sale, 'the debtor's later filing of exceptions ... may challenge only procedural irregularities at the sale or ... the statement of indebtedness.'" *Id.* (quoting *Greenbriar*, 387 Md. at 688). Further, we advised that, "[t]o the extent … *Bierman* may be perceived as attempting to confine our *Greenbriar* holding to its particular circumstances, *i.e.*, where there is a 'sum due and it is conceded that some sum is due and in default,' *Bierman*, 190 Md. App. at 266, … such a view would be misguided." *Id.* Rather, "*Greenbriar* was meant to be (and is) an explanation of the proper and general framework, structured in Rules 14-211 and 14-305, that a homeowner/borrower must follow when he or she seeks to raise pre- and/or post-sale objections in a foreclosure proceeding." *Id.* (citing *Greenbriar*, 387 Md. at 688). However, we noted that Ms. Bates did not allege that her lender had defrauded her, and we left open "whether a homeowner may raise under [Rule] 14-305, as a post-sale exception, allegations that a deed of trust was the product of fraud, and, therefore, the sale was invalid and *incapable* of passing title." *Id.* at 327-28 (emphasis in original); *see also id.* at 324 n.10.

### *Thomas*

In *Thomas v. Nadel*, the borrowers, Darnella Thomas and Charles Howard Thomas, Jr., raised an issue concerning the chain of title of the note evidencing their debt for the first time in post-sale exceptions. 427 Md. at 448 & n.12. The circuit court denied the exceptions and ratified the sale, concluding that the Thomases were required to raise their claim before the sale. *Id.* at 449. On appeal, the Thomases argued that the alleged gaps in

24

the chain of title amounted to a "fraud" on the judicial process, and that they properly raised such a fraud-based exception post-sale. *See id.* at 450.

We acknowledged that *Bates* left open "whether a post-sale exception might be based on fraud infecting the underlying debt, as was the case with the forgery in *Bierman*." *Id.* at 445 (citing *Bates*, 417 Md. at 327-28). We explained that "Maryland courts have distinguished between cases of forgery or alteration, as well as cases where the executing party was mistaken or misled as to the very nature and effect of the document being signed, from cases where the document is properly and intentionally executed but where the execution is induced by false pretenses or deceit." *Id.* at 451. The distinction rests on the proposition that "there can be no bona fide holder of title under a forged deed – where there was fraud in the creation of the document itself – whereas a deed obtained by false pretenses or deceit – for example, where the grantor is misled into believing the grantee is his long-lost brother – can transfer title to a bona fide purchaser." *Id.* at 451-52.

We concluded that the Thomases' allegations concerning the chain of title "do not amount to the kind of fraud that might induce this Court to qualify the general rule limiting the nature of post-sale exceptions." *Id.* at 450. The genuineness of the note was not in question. There was no allegation that the Thomases "were tricked into signing, that there was any misrepresentation, or that the signing was otherwise unlawful." *Id.* at 453. In contrast, "the note in *Bierman*, as a forgery, was fraudulent in itself and, as fabricated evidence, also qualified as a fraud on the court." *Id.* (citation modified). We affirmed the circuit court's ruling that the Thomases' complaint about the chain of title had to be raised

pre-sale. We again left open "whether fraud infecting the underlying mortgage or deed may be raised by a borrower in a post-sale exception." *Id.* at 454.

## B. Raising a Fraud Defense in a Foreclosure Action

We now consider the question we left open in *Bates* and *Thomas*. The Trustee argues that a borrower may not raise as a post-sale exception a fraud claim that the borrower raised pre-sale. According to the Trustee, the Appellate Court opinion in this case incentivizes litigants to "repackag[e] … post-sale allegations as fraud … without any regard for when the underlying facts were first known to them." Further, the Trustee contends that, to the extent a borrower may ever raise a claim of fraud for the first time as a post-sale exception, the borrower should be permitted to do so only where the alleged fraud occurred in the creation of the debt instrument.

Respondents argue that neither *Bates* nor *Thomas* overruled *Bierman*, which allowed a borrower to raise a fraud claim for the first time in post-sale exceptions. Respondents contend that, where a borrower raises a pre-sale challenge based on the inability of a lien to pass title, if the court does not rule on the merits of that claim pre-sale, the borrower may raise the same issue post-sale. According to Respondents, that rule would not negatively affect third-party purchasers, because the pre-sale challenge will have put potential purchasers on notice of the potential problem with the lien. Respondents assert that a contrary rule could lead to ratification of a sale based on a lien that was invalid and incapable of passing title. Respondents further contend that the importance of finality in real estate transactions is not a concern where the lender is the purchaser at foreclosure.

We hold that a borrower must raise a fraud defense pre-sale if the borrower was on notice of facts suggesting such fraud pre-sale. A borrower may not raise as a post-sale exception a defense to foreclosure that it included or should have included in a pre-sale motion. These parameters do not vary depending on the identity of the foreclosure sale purchaser.

We arrive at these conclusions based on the language of Rules 14-211 and 14-305, the reasoning of our prior cases, and pertinent policy considerations.

Rule 14-211(a)(3)(B) provides that a motion to stay and dismiss must state with particularity the factual and legal basis of each defense that a borrower has "to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action[.]" If the court concludes, among other things, that the motion "states on its face a defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action," the court shall set the matter for a hearing on the merits. Md. Rule 14-211(b)(2)(C). After that hearing, if the court finds that the borrower "has established that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose in the pending action, it shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action." Md. Rule 14-211(e).

Unlike Rule 14-211, Rule 14-305's plain language does not refer to the validity of the lien or the right to foreclose. Rather, Rule 14-305(e) provides that a party may file "exceptions to the sale" that "set forth the alleged irregularity with particularity[.]" Other provisions of Rule 14-305 require the purchaser and the auctioneer to provide post-sale affidavits concerning matters that go to the integrity of the sale. *See* Md. Rule 14-305(b),

(c). The failure to aver to these points might suggest the type of "irregularity" that is a matter for a post-sale exception. After considering any exceptions that are filed, the court must ratify the sale if the court is satisfied that "*the sale* was fairly and properly made[.]" Md. Rule 14-305(f) (emphasis added).

The plain language of Rules 14-211 and 14-305 reveals a line of demarcation: the former concerns the validity of the lien and the lienholder's right to foreclose, while the latter concerns the propriety of the sale. A claim that a borrower was defrauded in connection with the creation of the debt – and any other defense based on a matter occurring before the docketing of the foreclosure action – bears on the lienholder's right to foreclose, not on the propriety of the sale. Thus, the language of the rules supports the proposition that all claims of fraud relating to the debt must be raised pre-sale under Rule 14-211.

However, in *Bates* and *Thomas*, we implicitly recognized that at least some fraud claims may require more nuanced treatment. In *Bates*, we left open "whether a homeowner may raise under [Rule] 14-305, as a post-sale exception, allegations that a deed of trust was the product of fraud, and, therefore, the sale was invalid and *incapable* of passing title." 417 Md. at 327-28 (emphasis in original); *see also id.* at 324 n.10. And, in *Thomas*, we again left open the question "whether fraud infecting the underlying mortgage or deed may be raised by a borrower in a post-sale exception." 427 Md. at 454. In discussing the implications of fraud on the ability to pass clean title to property, we distinguished between "cases of forgery or alteration, as well as cases where the executing party was mistaken or misled as to the very nature and effect of the document being signed, from cases where the document is properly and intentionally executed but where the execution is induced by

28

false pretenses or deceit." *Id.* at 451. These passages from *Bates* and *Thomas* reflect a tension between the language of the pertinent rules and the effect of certain types of fraud on the ability to pass clean title to property.

This tension is also apparent in conflicting policy considerations. On one hand, the foreclosure process depends on the willingness of potential third-party purchasers to bid on distressed properties. Deciding all challenges to the right to foreclose pre-sale – including all claims of fraud – would further that goal. Under that system, potential buyers would know that all claims relating to the validity of the lien have been resolved before the sale. Thus, if they are the successful bidder at the sale, they will not have to worry that a borrower may be able to undo the sale by claiming that the lien was infected by fraud. They will have to be concerned only about potential irregularities in the sale itself.

A contrary rule – one that allows borrowers to raise all claims of fraud for the first time in post-sale exceptions – likely would discourage potential buyers from bidding at foreclosure sales. As we observed in *Bates*:

> [I]f a borrower was able to raise any sort of exception after the foreclosure sale, there undoubtedly would be a chilling effect on interested prospective purchasers coming to sales. Prospective third-party purchasers would be unable – based on most practical notions of what constitutes due diligence – to gauge against such claims the risk of an intended investment. Being a bona fide purchaser for value then would not mean as much or even offer the traditional safe harbor underlying that status.

417 Md. at 329-30. Fewer bids means less competition, which leads to sales of distressed properties at lower prices. Lower prices result in less equity going to borrowers, sometimes leading to a borrower being liable for a deficiency judgment. *See* Amelia H. Boss, *Real Estate in Bankruptcy: Avoiding the Trustee's Avoidance Powers Part I – Foreclosures,* 1

J. BANKR. L. & PRAC. 150, 177 (1992) ("The fewer the bidders, the lower the foreclosure-sale price and the greater the resultant deficiency judgment.").

On the other hand, as Respondents observe, preventing a borrower from raising a post-sale fraud exception could result in the transfer of title to property based on a lien that was fabricated. This would reward wrongdoers and penalize victims of criminal acts.

We conclude that borrowers must raise all fraud claims they know about, or reasonably should know about, in a pre-sale motion filed under Rule 14-211. A borrower may not raise as a post-sale exception any claim – including a fraud claim – that the borrower reasonably could have included in a Rule 14-211 motion. This is consistent with our statement in *Greenbriar* that a borrower's obligation is "to prosecute his rights, not to sit on them." 387 Md. at 740; *see also Bates*, 417 Md. at 327 (Rule 14-305 "is not an open portal through which any and all pre-sale objections may be filed as exceptions, without regard to the nature of the objection or when the operative basis underlying the objection arose and was known to the borrower").[12] To the extent that *Bierman* can still be read, after *Bates* and *Thomas*, to permit a borrower to raise as a post-sale exception a fraud claim that the borrower reasonably could have raised pre-sale, we disapprove of *Bierman*'s reasoning.[13]

---

[12] Respondents point out that, in *Fagnani v. Fisher*, 418 Md. 371 (2011), we considered questions concerning the right to foreclose that were litigated in an exceptions hearing. Although we had decided *Bates* only three months earlier, we did not cite *Bates* in *Fagnani*. It appears that the trustees in *Fagnani* did not object to the consideration of the borrower's contentions concerning the right to foreclose as post-sale exceptions.

[13] In *Bierman*, Ms. Hunter became aware in June 2006 of the alleged forgery of her signature on the power of attorney. 190 Md. App. at 254. Ms. Hunter received notice of

These parameters apply regardless of the identity of the purchaser at foreclosure. When an order to docket foreclosure is filed, a borrower does not know who the purchaser at the sale will be. Sound policy dictates that a borrower should assume the purchaser will be a third party who has no knowledge of an alleged problem with the lien. Therefore, if a borrower knows or should know of such a problem with the lien pre-sale, the borrower must raise the issue pre-sale.[14]

Respondents argue that a borrower who raises a fraud claim pre-sale, but who does not obtain a ruling on the merits of that claim following the revocation or dissolution of the stay, should be permitted to raise the claim again as a post-sale exception. According to Respondents, we need not be concerned about a third-party purchaser who bids on a property with notice that the borrower filed a pre-sale fraud claim that has not been resolved on the merits. As Respondents see it, such a purchaser proceeds at their peril.

---

the foreclosure sale on October 27, 2006. *Id.* She did not file a motion for an injunction prior to the sale, which occurred on November 22, 2006, but rather raised the issue of the forged power of attorney for the first time as a post-sale exception. *Id.* Under the approach we adopt here, Ms. Hunter presumably would have been required to raise her forgery claim pre-sale.

[14] We do not decide here whether a borrower may raise for the first time as a post-sale exception a claim of fraud of which the borrower lacked notice pre-sale. We refer to the Standing Committee on Rules of Practice and Procedure (the "Rules Committee") the following questions: (1) may a borrower raise a fraud claim for the first time as a post-sale exception, where the borrower lacked notice of the claim prior to the foreclosure sale; (2) if so, must a borrower establish as a threshold matter at an exceptions hearing that they lacked notice of the alleged fraud in advance of the foreclosure sale and, if such a showing is required, by what standard of proof must it be made; and (3) what types of fraud allegations may a borrower raise for the first time as post-sale exceptions? The Rules Committee may consider and address other matters relating to the above questions as it deems appropriate.

We do not favor Respondents' approach, which would chill potential bidders in the same way that allowing a borrower to raise a known fraud claim for the first time post-sale would chill bidders. As we discuss in the next section, there are ways for a borrower to seek a pre-sale merits hearing after revocation or dissolution of the stay of a foreclosure sale. If the borrower does not pursue any of those options and the sale goes forward without a hearing and ruling on the borrower's pre-sale defenses, the borrower may not re-raise a pre-sale fraud claim as a post-sale exception. The Appellate Court erred in holding to the contrary.

We also disagree with the Appellate Court's alternative theory that the resolution of a pre-sale fraud claim can be "delayed until after the sale." *New Life Evangelical Baptist Church*, 2025 WL 79643, at *6 n.14. As discussed above, the pertinent rules create a line of demarcation between pre-sale and post-sale remedies. Adopting the Appellate Court's alternative approach would blur that line, discouraging potential purchasers from bidding at foreclosure sales.[15]

---

[15] We disagree with the Dissent's position that, "when a court revokes a stay, a party remains entitled to an evidentiary hearing on the merits of its pre-sale defenses 'within 60 days after the originally scheduled date of sale.'" Dissenting Op. of Watts., J., at 2 (quoting Md. Rule 14-211(b)(2)(C)). The Dissent reads the 60-day period set forth in Rule 14-211(b)(2)(C) as if it bears no relation to the provision that immediately follows in Rule 14-211(c)(1), which states that "[i]f the hearing on the merits cannot be held prior to the date of sale, the court shall enter an order that temporarily stays the sale on terms and conditions that the court finds reasonable and necessary to protect the property and the interest of the plaintiff." These two components of Rule 14-211 work in tandem to provide an orderly process by which a foreclosure sale can be stayed long enough to conduct a merits hearing. The 60-day time period in Rule 14-211(b)(2)(C) effectively limits the amount of time that the stay imposed under Rule 14-211(c)(1) will need to be in effect. Rule 14-211(b)(2)(C)

32

Respondents complain that the approach we adopt may lead to the transfer of title to a property where the lien was incapable of passing title because it was a product of fraud. But a court has no way to know that a debt is the product of fraud unless it is proven to be a product of fraud. The time to raise a known fraud claim as a defense to foreclosure is pre-sale. If a borrower knows or should know the facts that would support such a claim before the sale but fails to raise the issue in a Rule 14-211 motion, the borrower forfeits the opportunity to obtain a ruling that there was such fraud. And if a court revokes a stay (or, as occurred here, the stay is dissolved under the terms of the temporary stay order) and the court does not rule on the merits of a pre-sale fraud claim before the rescheduled foreclosure sale occurs, the borrower similarly forgoes the opportunity to receive a ruling on that claim.[16]

## C. A Borrower's Options When a Stay of Foreclosure Is Dissolved or Revoked for Failure to Meet a Condition of the Stay

As discussed above, if a Rule 14-211 motion is timely filed (or untimely filed but with good cause), substantially complies with Rule 14-211's requirements, and states a prima facie defense to the right to foreclose, "the court shall set the matter for a hearing on

---

has no bearing on what happens after a stay issued under Rule 14-211(c)(1) is revoked or dissolves.

[16] The Trustee agrees with Judge Harrell's view below that Respondents' "failure to perfect" their pre-sale opportunity to obtain a ruling on the fraud claim they raised in their Rule 14-211 motion "should be deemed a waiver of an assumed right to assert a virtually identical fraud claim as a post-sale challenge." *New Life Evangelical Baptist Church*, 2025 WL 79643, at *7 (Harrell, J., dissenting). As discussed, a borrower has no right to reassert a pre-sale fraud defense as a post-sale exception. Thus, there was no such right to waive in this case.

the merits of the alleged defense." Md. Rule 14-211(b)(2). If the circuit court cannot hold a merits hearing prior to the original foreclosure sale date, the court must enter an order temporarily staying the sale "on terms and conditions that the court finds reasonable and necessary to protect the property and the interest of the plaintiff." Md. Rule 14-211(c)(1).

We expect that, in most cases where a circuit court imposes conditions on the stay of a foreclosure sale, the borrower will satisfy those conditions and the stay will remain in effect long enough to hold the scheduled merits hearing and for the court to rule on the borrower's motion. However, as this case demonstrates, there will be cases where a borrower fails to comply with the imposed conditions, leading to revocation or dissolution of the stay. In such a situation, as discussed, if the sale goes forward without a hearing and ruling on the merits of the borrower's motion, the borrower will have forgone the opportunity for a ruling on all claims the borrower raised or should have raised in the Rule 14-211 motion.

However, when a borrower fails to meet one or more conditions of the stay, the borrower does not necessarily forgo the opportunity to obtain a ruling on the merits of their Rule 14-211 motion before the sale. A borrower in that situation has several options. First, the borrower can file a motion to extend the stay to allow the borrower more time to satisfy the condition in question. And, if the court denies the motion to extend the stay or revokes the stay for failure to satisfy the condition, the borrower may note an interlocutory appeal under Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 12-303(3)(i) (1973, 2020 Repl. Vol., 2025 Supp.), which provides that an order dissolving an injunction is immediately appealable. *See Montgomery County v. Maryland-Washington Metro. Dist.*, 200 Md. 525,

528 (1952) ("[A]n appeal lies from a dissolution of an injunction and, no less, will lie from the dissolution for failure to obey a condition set by the court."); *see also Fishman v. Murphy ex rel. Est. of Urban*, 433 Md. 534, 540 n.2 (2013) (a party may immediately appeal a court's denial of a Rule 14-211 motion because such a denial is a refusal to grant an injunction).[17]

Second, if a borrower cures the non-compliance prior to a rescheduled foreclosure sale, the borrower may move for reinstatement of the stay and, if necessary, rescheduling of the merits hearing. Third, even if the borrower does not cure their non-compliance, the borrower may ask the court to go forward with a merits hearing prior to the rescheduled foreclosure sale.

## D. Resolution of This Appeal

The application of the principles set forth above to this case is straightforward.

---

[17] Respondents cite *McLaughlin v. Ward*, 240 Md. App. 76 (2019), for the proposition that no appeal from a denial of a motion to stay a foreclosure may be taken until the sale is ratified. In *Fishman*, we held that a borrower may file an interlocutory appeal of the denial of a Rule 14-211 motion. 433 Md. at 540 n.2. If Respondents' reading of *McLaughlin* were correct, *McLaughlin* would be directly at odds with *Fishman*. But Respondents misread *McLaughlin*, which concerned an interlocutory order denying a post-sale exception, not an interlocutory order denying a pre-sale motion under Rule 14-211. *See McLaughlin*, 240 Md. App. at 82. The appellant in *McLaughlin* did not argue that the interlocutory order at issue in that case was a denial of injunctive relief that would have been immediately appealable under CJP § 12-303(3)(iii). *See id.* at 85, 86.

Other cases of the Appellate Court have held that the denial of a Rule 14-211 motion may be appealed after ratification of a foreclosure sale. *See, e.g.*, *Granados v. Nadel*, 220 Md. App. 482, 497 n.13 (2014). We do not decide in this case whether a borrower may challenge the denial of a Rule 14-211 motion in an appeal filed after ratification of a foreclosure sale, or whether the borrower must file an interlocutory appeal of that denial.

1. Respondents Were Not Permitted to Reassert Their Pre-Sale Fraud Claim as a Post-Sale Exception.

Respondents filed a pre-sale motion raising the issue of the validity of Mr. Pfeffer's lien. We accept the Appellate Court's characterization of this pre-sale claim as sounding in fraud. Respondents were not permitted to restate that claim as a post-sale exception. Their one and only opportunity to litigate all known defenses to the right to foreclose was pre-sale.

2. After the Stay Dissolved, Respondents Failed to Take Any Action to Preserve the Opportunity to Obtain a Merits Ruling Pre-Sale.

Respondents did not argue below or before us that the circuit court abused its discretion in connection with the dissolution of the stay after Respondents failed to obtain the required property insurance.[18] The stay having dissolved, the Trustee acted within his rights in rescheduling the foreclosure sale for March 1, 2023. Respondents and their counsel received notice of the new sale date on February 9 and 10, respectively.

The Trustee argues that Respondents' failure to comply with the insurance condition effected a waiver of their pre-sale defenses to foreclosure. We disagree. However, after the Trustee rescheduled the foreclosure sale for March 1, if Respondents still wanted to have

_____

[18] The Temporary Stay Order provided that the stay would dissolve without further order of the court upon the filing by the Trustee of notice that the conditions to the stay had not been satisfied. Respondents did not object to the inclusion of this provision in the Temporary Stay Order. There is no dispute that Respondents failed to comply with the insurance condition by the required date, and that the Trustee subsequently filed a notice to that effect. Thus, under the terms of the Temporary Stay Order, the stay dissolved. For purposes of this case, there is no practical difference between the dissolution of the stay and an order revoking the stay.

a merits hearing on their pre-sale defenses before a sale occurred, it was incumbent upon them to act accordingly. They had several available options. First, under CJP § 12-303(3)(i), Respondents could have filed an interlocutory appeal of the order denying their motion to extend the time to obtain insurance. That motion was, in substance, a motion to extend the stay. The order denying the motion effectively allowed the stay to dissolve. For these reasons, the order denying the motion to extend time to obtain insurance was immediately appealable.

Second, Respondents could have asked the court to reinstate the stay after they allegedly obtained the required property insurance approximately two weeks before the rescheduled sale date.[19] Third, whether or not they secured the property insurance, Respondents could have asked the circuit court to reschedule the merits hearing for a date prior to the sale.

Respondents did none of these things. The circuit court was not required on its own initiative to reschedule the merits hearing from April 17 to a date before the rescheduled sale date of March 1. As discussed, after the foreclosure sale occurred, Respondents lost the opportunity to obtain a ruling on the merits of the claims they raised pre-sale.

---

[19] The Temporary Stay Order provided: "The right of [Respondents] to seek to reinstate the stay upon a showing that the Conditions were satisfied is reserved[.]" That language arguably can be read to contemplate that, if Respondents satisfied the Conditions after dissolution of the stay but before the rescheduled sale date, they could move for reinstatement of the stay. Whether or not that scenario was contemplated by the stay order, nothing barred Respondents from moving for reinstatement of the stay after they allegedly obtained the required insurance approximately two weeks after January 24, which was more than two weeks before the rescheduled sale date of March 1.

3. The Fraud Claim That Respondents Raised for the First Time Post-Sale Also Should Have Been Included in Their Pre-Sale Motion.

In their motion for reconsideration of the denial of their post-sale exceptions, Respondents alleged for the first time that the 2000 Note involved no loan from Mr. Pfeffer to New Life. The circuit court was correct to deny the motion for reconsideration to the extent Respondents sought to add this claim as a post-sale exception. Respondents knew or should have known of this claim in time to include it in their pre-sale motion. The consolidation of the Original Notes into the 2000 Note occurred more than 20 years before the Trustee filed the foreclosure action. That being the case, Respondents were required to include this claim in their pre-sale motion.

For the reasons stated above, Respondents are not entitled to any further hearing in the circuit court on their claims that Mr. Pfeffer's lien was the product of fraud or is otherwise invalid. The circuit court correctly denied Respondents' post-sale exceptions based on these claims. Accordingly, we reverse the judgment of the Appellate Court.

Respondents also argued in the Appellate Court that the circuit court incorrectly overruled their exception concerning the sale price. The Appellate Court did not reach that question. *See New Life Evangelical Baptist Church*, 2025 WL 79643, at *4 n.10. We shall remand this case to the Appellate Court for resolution of that issue.

**IV**

**Conclusion**

If a borrower knows or reasonably should know of a defense to the right to foreclose in advance of a foreclosure sale, the borrower must raise that defense in a pre-sale motion

38

to stay the sale and dismiss the action under Maryland Rule 14-211. Respondents raised defenses sounding in fraud in a Rule 14-211 motion, but the circuit court did not rule on the merits of those defenses pre-sale after Respondents failed to comply with a condition of the stay. Respondents' noncompliance with the conditions of the stay was not a waiver of their pre-sale defenses to the right to foreclose. However, Respondents took no further action to obtain a ruling on those defenses prior to the rescheduled sale, and the circuit court was not required on its own initiative to reschedule a merits hearing for a date prior to the sale. After the sale, Respondents could not raise their pre-sale defenses again as post-sale exceptions. Nor were Respondents permitted to raise for the first time as a post-sale exception another fraud claim that they knew, or should have known, about in time to include in their pre-sale motion.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED. CASE REMANDED TO THE APPELLATE COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THE APPELLATE COURT AND THIS COURT TO BE PAID BY RESPONDENTS.**

Circuit Court for Baltimore City
Case No. 24-O-22-001063

Argued: October 6, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 15

September Term, 2025

———————————————————

WILLIAM L. HALLAM

v.

NEW LIFE EVANGELICAL BAPTIST
CHURCH, INC., ET AL.

———————————————————

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

———————————————————

Dissenting Opinion by Watts, J., which Eaves
and Killough, JJ., join.

———————————————————

Filed: June 22, 2026

Respectfully, I dissent. I would hold that, although Respondents, New Life Evangelical Baptist Church, Inc. and Turning Point, Inc., failed to satisfy the conditions of their temporary stay, the Circuit Court for Baltimore City did not make a finding of non-compliance and revoke the stay under Maryland Rule 14-211(c)(1) and that based on this circumstance and the text of Maryland Rule 14-211, Respondents remain entitled to an evidentiary hearing on the merits of their fraud allegations. In my view, proper interpretation of Maryland Rule 14-211 compels such a conclusion. Accordingly, I would affirm the judgment of the Appellate Court of Maryland, which reversed the circuit court's ruling that Respondents waived their foreclosure defenses and remanded the case for an evidentiary hearing. See New Life Evangelical Baptist Church, Inc. v. Hallam, No. 0860, Sep. Term, 2023, 2025 WL 79643, at *1, *7 (Md. App. Ct. Jan. 13, 2025).

When construing whether Maryland Rule 14-211 entitles a party to an evidentiary hearing on the merits of its defenses after a court has revoked a temporary stay upon a finding of non-compliance, we apply the longstanding rules of statutory construction. See Bratt v. State, 468 Md. 481, 494, 227 A.3d 621, 628 (2020) ("We construe the meaning of Maryland Rules using the well-settled principles of statutory construction and interpretation." (Citing Bailey v. State, 464 Md. 685, 696, 212 A.3d 912, 918 (2019))). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly." Adelakun v. Adelakun, 491 Md. 1, 18, 338 A.3d 614, 624 (2025) (quoting Amaya v. DGS Constr., LLC, 479 Md. 515, 540, 278 A.3d 1216, 1231 (2022)). In Lockshin v. Semsker, 412 Md. 257, 275-77, 987 A.2d 18, 28-29 (2010), we set forth the following principles of statutory construction:

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

. . .

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

(Citation modified).

"[V]iewed within the . . . scheme to which it belongs," Lockshin, 412 Md. at 276, 987 A.2d at 29, the plain language of Maryland Rule 14-211 demonstrates that, when a court revokes a stay, a party remains entitled to an evidentiary hearing on the merits of its defenses "within 60 days after the originally scheduled date of sale[,]" Md. R. 14-211(b)(2)(C). Maryland Rule 14-211 establishes the procedure by which a party may raise defenses to a foreclosure through a motion to stay the sale and dismiss the action. Under subsection (b)(2), if a circuit court concludes that a party's motion meets certain criteria— including that the motion states on its face a defense to the validity of the lien—then the court must set a hearing on the merits. See Md. R. 14-211(b)(2) (Maryland Rule 14-

211(b)(2) states that if a party's motion "was timely filed[,]" "substantially complies with the requirements of [] Rule [14-211]," and "states on its face a defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose . . . [then] the court *shall* set the matter for a hearing on the merits of the alleged defense." (Emphasis added)). Subsection (b)(2)(C) states that the court should schedule the hearing "for a time prior to the date of sale, if practicable, otherwise within 60 days after the originally scheduled date of sale." Md. R. 14-211(b)(2)(C). This language plainly contemplates that a hearing may occur after the sale. By requiring courts to hold the hearing before the sale "if practicable," and if not practicable, then within sixty days after the originally scheduled sale date, Md. R. 14-211(b)(2)(C), the Rule anticipates circumstances in which the hearing cannot occur before the sale and therefore must occur afterward.

No language in the Rule directs, or even suggests, that the revocation of a stay eliminates a party's entitlement to a hearing on the merits. Subsection (c)(1) provides that a court may grant a temporary stay "[i]f the hearing on the merits cannot be held prior to the date of sale," permits the court to impose conditions on the stay, and allows the court to revoke the stay if the conditions are not met. Md. R. 14-211(c)(1). However, subsection (c)(1) does not state that, in the event the court revokes the stay, the party loses the right to a hearing on the merits. See Md. R. 14-211(c)(1). Read together, subsections (b)(2) and (c)(1) grant parties different rights: subsection (b)(2) requires the court to set a merits hearing once a party meets substantive and procedural criteria, whereas subsection (c)(1) merely permits a court to stay the sale until the hearing can occur. See Md. R. 14-

211(b)(2)(C), (c)(1). The revocation of a stay affects only whether the sale proceeds before the hearing, not whether the hearing proceeds at all.

Because nothing in Maryland Rule 14-211(b)(2)(C) or (c)(1) provides that a defendant's right to a merits hearing on a defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action is extinguished where a stay is revoked, it cannot be accurate that Maryland Rule 14-211(b)(2)(C)'s provision that "if practicable," a court should schedule a merits hearing within 60 days after the originally scheduled date of sale "has no bearing on what happens after a stay issued under Rule 14-211(c)(1) is revoked or dissolves[,]" Maj. Slip Op. at 32-33 n.15.

To read Maryland Rule 14-211(b)(2)(C) as having "no bearing on what happens after a stay issued under Rule 14-211(c)(1) is revoked or dissolves[,]" is to ignore the plain language of the Rule and violate numerous basic principles of statutory construction. A basic approach of statutory and Rules construction is that the General Assembly and this Court generally do not enact or adopt statutes or rules that reach absurd and unjust results. See, e.g., Bottini v. Dep't of Fin., 450 Md. 177, 188, 147 A.3d 371, 378 (2016) ("In construing a statute, we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." (Citation modified)). The meaning of a Rule cannot be ascertained in a vacuum or through interpretation of isolated provisions. See Lockshin, 412 Md. at 275, 987 A.2d at 29 (We "do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." (Citation modified)).

Tethering the meaning of Maryland Rule 14-211(b)(2)(C) solely to Maryland Rule 14-211(c)(1), the subsection that comes after it, violates each of these principles. Reading Maryland Rule 14-211(b)(2)(C)'s direction that a hearing shall, "if practicable," be scheduled for before the date of sale or be scheduled within 60 days after the originally scheduled date as having no relationship with language preceding it in the same subsection—which provides that a court shall schedule a hearing where a motion presents a facially valid defense—would both render effectively meaningless the court's determination that a defendant has raised a facially valid defense warranting a hearing and be absurd. One need only look at the structure of the Rule to conclude that the meaning of the 60-day period is linked to the sentence that precedes it in the same subsection and sets forth the timeframe during which a hearing on the merits must occur, regardless of whether a stay has been revoked.

Maryland Rule 14-211(b)(2)(C) states:

If the court concludes on the record before it that the motion:

. . .

(C) states on its face a defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action, the court *shall* set the matter for a hearing on the merits of the alleged defense. The hearing *shall* be scheduled for a time prior to the date of sale, if practicable, otherwise within 60 days after the originally scheduled date of sale.

(Emphasis added).

Rather than adopt the interpretation of Maryland Rule 14-211 that its text warrants, which would allow a defendant to have a merits hearing after a court has determined that a hearing is warranted, the Majority reads Rule 14-211(b)(2)(C) in a way to limit and

remove a defendant's right to a hearing after a stay has been revoked, despite a court having concluded that the defendant's motion states on its face a defense that warrants a merits hearing and the Rule not stating, or suggesting in any way, the defendant's hearing must be canceled if the defendant is unable to comply with the conditions of a stay. This is not only an absurd and illogical result, but also an unjust one.

Maryland Rule 14-211(c)(1) states, in relevant part, only that "[t]he court may require the moving party to provide reasonable security for compliance with the conditions it sets and may revoke the stay upon a finding of non-compliance." There is no language in Maryland Rule 14-211 that abolishes a borrower's entitlement to a hearing on the merits when a stay is revoked. Instead, when a court revokes a stay, a borrower remains entitled to an evidentiary hearing on the merits of its defense "within 60 days after the originally scheduled date of sale." Md. R. 14-211(b)(2)(C). Where a stay has been revoked, it is not practicable for a hearing to be scheduled for a time prior to the date of sale; in that event, under Maryland Rule 14-211(b)(2)(C), the hearing on the merits shall be scheduled "within 60 days after the originally scheduled date of sale."

When a stay is granted, the originally scheduled date of sale is cancelled. Maryland Rule 14-211(b)(2)(C) contemplates that after a stay has been revoked the sale will be rescheduled and mandates a definitive timeframe in which a hearing on the merits of a borrower's defense must occur after the originally scheduled date of the sale. The revocation of a stay affects only whether the sale occurs before the hearing, not whether the hearing proceeds at all. See Md. R. 14-211(b)(2)(C). Maryland Rule 14-211(b)(2)(C) provides that where a motion on its face states a defense to the validity of a lien or the lien

instrument or to the right of the plaintiff to foreclose, the court *shall* set the matter for a hearing on the merits of the alleged defense. No language in the Rule relieves a court of this obligation.

Section (e), in particular, contains no language suggesting that the revocation of a stay eliminates a party's entitlement to a hearing on the merits. It instructs courts regarding how to rule "[a]fter [a] hearing on the merits[.]" Md. R. 14-211(e). If "the moving party has established that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose[,]" then a court "shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action. If the court finds otherwise, it shall deny the motion." Md. R. 14-211(e). Section (e) does not state that this determination must occur before the sale, nor that a party's right to a merits determination is extinguished if the sale proceeds before the hearing. Maryland Rule 14-211, read as a whole, does not condition the right to a merits hearing on the timing of a sale or on whether a stay remains in place.

This reading is consistent with the Rule's purpose, which is to provide a mechanism by which a party "may file in the action a motion to stay the sale of the property and dismiss the foreclosure action[,]" and if said motion satisfies substantive and procedural requirements, obtain "a hearing on the merits of the alleged defense." Md. R. 14-211(a)(1). (b)(2)(C). The Rule's purpose reflects an intent to ensure that properly raised defenses are resolved on the merits rather than extinguished by the timing of the sale. To interpret this Rule in the manner the Majority does would allow a substitute trustee to nullify a defense to the validity of a lien where a stay is revoked by quickly scheduling a sale before a

scheduled merits hearing date, as occurred here.[1]  That construction would be inconsistent with the language, scheme, and purpose of Maryland Rule 14-211 and would produce an absurd result.  See Lockshin, 412 Md. at 276-77, 987 A.2d at 29 ("In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense."  (Citing Bd. of Educ. v. Zimmer-Rubert, 409 Md. 200, 214, 973 A.2d 233, 241 (2009); Anderson v. Council of Unit Owners, 404 Md. 506, 571, 948 A.2d 11, 18 (2008); Barbre v. Pope, 402 Md. 157, 172, 935 A.2d 699, 708 (2007))).

Against this backdrop, it makes little sense to interpret Maryland Rule 14-211 as permitting a hearing on the merits concerning a defense to the right of a person to foreclose only where a defendant has the wherewithal or ability to afford the conditions imposed by a stay.  In my experience, in mortgage foreclosure cases, the disposition of a motion to dismiss can be already frequently perceived as unfair by the homeowner or borrower.  A holding that hinges a borrower's "one and only opportunity to litigate all known defenses to the right to foreclose[,]" Maj. Slip Op. at 36, on the ability to afford the conditions of a stay pre-sale will only enhance that sentiment.

---

[1]Although I say that is what happened here, in actuality, the circuit court did not make a finding of non-compliance and revoke Respondents' stay.  Maryland Rule 14-211(c)(1) provides that the court may revoke the stay upon a finding of non-compliance. The "Notice of Failure to Satisfy Conditions to Stay of Sale and Dissolution of Stay" filed by the substitute trustee in the circuit court had no practical effect under Maryland Rule 14-211(c)(1), which by its plain language states that a stay is revoked by the court after a finding of non-compliance.  The Temporary Stay Order issued by the circuit court stated that "[i]f the Borrower and the Property Owner fail to satisfy the Conditions on or before January 24, 2023, upon the filing by the Trustee with the Court of a notice that the Conditions have not been satisfied the stay of the sale of the Property shall dissolve without further Order of the Court."  However, temporary stays issued by a court pursuant to Maryland Rule 14-211 do not "dissolve" on their own.

- 8 -

Claiming that a borrower who is unable to satisfy the conditions of a stay is not necessarily denied the opportunity to obtain a ruling on the merits as to their defense, the Majority sets up a gauntlet of illusory "options[.]" Maj. Slip Op. at 37. According to the Majority, first, the borrower may file a motion to reinstate the stay after the borrower is able to satisfy the required conditions. See Maj. Slip Op. at 37. According to the Majority, Respondents could have filed a motion to reinstate the stay after they "allegedly obtained the required property insurance approximately two weeks before the rescheduled sale date." Maj. Slip Op. at 37 (footnote omitted). Well, on January 25th, Respondents filed a motion to extend time to obtain insurance, advising that they would have the required insurance within seven days of the date on which the motion was filed. The court denied, without explanation, Respondents' motion to extend time to obtain insurance before it could be docketed on the day it was filed. The court denied the motion in a one sentence order, without a hearing or requiring a response from Petitioner. Respondents sought time to obtain insurance in order to reinstate the stay and the court said no.[2]

Next, the Majority says the borrower may note an interlocutory appeal of an order revoking the stay under Md. Code Ann., Cts. & Jud. Proc. (1974, 202 Repl. Vol., 2025 Supp.) § 12-303(3)(i). See Maj. Slip Op. at 37. Well, given that what the borrower would be appealing is the revocation of a stay, the foreclosure sale would proceed, resulting in

___

[2]Given the sequence of events in this case, it is not persuasive to say that "nothing barred Respondents from moving for reinstatement of the stay after they allegedly obtained the required insurance approximately two weeks after January 24," Maj. Slip Op. at 37 n.19, when, on January 25, Respondents moved to extend the time to obtain insurance to reinstate the stay but the motion was denied the same day the motion was filed before it could be docketed.

- 9 -

the lender contending on appeal that the matter is moot. Also, for a borrower who has filed a motion to dismiss and is already unable to satisfy what generally will be a financial condition of a stay, the option of noting an interlocutory appeal may be unrealistic.

Third, the Majority says that if the borrower is unable to satisfy the condition of the stay, the borrower may simply ask the court to go forward with a merits hearing prior to the rescheduled foreclosure sale. See Maj. Slip Op. at 37. Well, this is the most illusory option of them all. Aside from the point that a borrower's ability to assert a defense in a mortgage foreclosure case should not depend on the borrower's capacity to convince a court to hold a hearing when the court has already determined that a hearing is warranted or on availability of time on a court's calendar, given the timeframes involved, this is not a realistic option. A notice of the time and place of a foreclosure sale must be sent not more than 30 days and not less than 10 days before the date of a foreclosure sale. See Md. Code Ann., Real Prop. (1974, 2023 Repl. Vol.) § 7-105.4(c)(2). In this case, after filing a notice of dissolution of the stay, the substitute trustee rescheduled the sale for March 1, 2023. Respondents first received notice of the sale on February 9, 2023. So, Respondents, as most borrowers will have in a similar situation, had three weeks to file a motion or request, asking the court to hold a merits hearing before the March 1st sale. Of the three weeks, under Maryland Rule 2-311, the substitute trustee had 15 days to respond to the motion. Assuming that Respondents filed the motion on the same day that they received notice of the rescheduled sale (which would be unlikely), this would have resulted in a total of 7 days before the rescheduled sale for the court to review the motion and response, issue an order deciding the motion, and hold a hearing on the merits. This is the timeframe that

- 10 -

the Majority says presented a viable option for Respondents to be heard on a defense on the merits—*i.e.*, on a motion that the circuit court had already determined presented a defense to the validity of the lien or the lien instrument or to the right of the substitute trustee to foreclose in this case.

Here, the circuit court did not deny Respondents' motion and instead scheduled a hearing on the merits of Respondents' defenses. Under Maryland Rule 14-211(b)(1), a court shall deny a party's motion if it concludes that the motion does not satisfy the Rule's substantive and procedural requirements, including if the motion "does not on its face state a valid defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action." By contrast, under subsection (b)(2), if a motion satisfies the Rule's substantive and procedural requirements, including "stat[ing] on its face a defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action, [then] the court shall set the matter for a hearing on the merits of the alleged defense." Md. R. 14-211(b)(2). Because the circuit court did not deny the motion and instead scheduled a merits hearing, it necessarily concluded that Respondents had satisfied the substantive and procedural requirements of the Rule, including stating a facially valid defense. Accordingly, under the language, scheme, and purpose of Maryland Rule 14-211, Respondents remain entitled to a merits hearing, particularly since the circuit court never made a finding of non-compliance and revoked the stay.

For the above reasons, respectfully, I dissent.

Justice Eaves and Justice Killough have authorized me to state that they join in this opinion.